CASE NO. 18-12842-JJ

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

REBEKKA BEHR, ET AL.,

Appellants,

v.

JAMES CAMPBELL, ET AL.,

Appellees.

---

Appeal from the United States District Court
for the Southern District of Florida
L.T. Case No. 9:18-cv-80221-RLR

---

**JOINT PRINCIPAL BRIEF OF
APPELLANTS REBEKKA BEHR AND LOUIS BEHR
AND APPELLANT J.B., A MINOR**

---

Brion Blackwelder, Esq.
NOVA SOUTHEASTERN UNIVERSITY
Shepard Broad College of Law
Children and Families Clinic
3305 College Ave
Fort Lauderdale, Florida 33314
Tel: (954) 262-6135
Fax: (954) 262-3832

*Appellate Counsel for
Appellant J.B., a minor*

Richard J. Ovelmen, Esq.
Rachel A. Oostendorp, Esq.
CARLTON FIELDS, P.A.
Suite 4200 Miami Tower
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 530-0050
Fax: (305) 530-0055

*Appellate Counsel for Appellants
Rebekka Behr and Louis Behr*

## CERTIFICATE OF INTERESTED PERSONS
## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 – 26.1-3, Appellants, Rebekka Behr and Louis Behr, hereby certify that the following persons or entities may have an interest in the outcome of this litigation. In addition, Appellants Rebekka Behr and Louis Behr state that the corporate-disclosure requirements of F.R.A.P. 26.1 and Eleventh Circuit Rule 26.1-1 do not apply here.

1. Avossa, Robert

2. Behr, Louis H. – Plaintiff-Appellant

3. Behr, Rebekka Anne – Plaintiff-Appellant

4. Bell, Jon E. – Counsel for Defendants-Appellees James Campbell and Palm Beach County School District

5. Bernard, Shawntoyia N. – Counsel for Defendant-Appellee Palm Beach County School District

6. Blackwelder, Brion – Appellate Counsel for Plaintiff-Appellant J.B.

7. Braun, Jay – Defendant-Appellee

8. Brooks, Melissa K. – Defendant-Appellee

9. Campbell, James – Defendant-Appellee

10. Carlton Fields, P.A. – Appellate Counsel for Appellants Rebekka Ann Behr and Louis H. Behr

11. Demar, Julie – Defendant-Appellee

12. Fahey, Sean C. – Counsel for Defendants-Appellees James Campbell and Palm Beach County School District

13. Fenner, Roberta – Defendant-Appellee

14. Fennoy, Donald

15. Florida Office of Inspector General – Defendant-Appellee

16. Florida Guardian Ad Litem Program – Defendant-Appellee

17. Florida State DCF – Defendant-Appellee

18. Franklin, Patricia L. – Defendant-Appellee

19. The Honorable James M. Hopkins – United States Magistrate Judge

20. The Honorable Bruce E. Reinhart – United States Magistrate Judge

21. The Honorable Robin L. Rosenberg– United States District Judge

22. Hudson, Kathy – Defendant-Appellee

23. J.B., minor child, by and through Father, Louis H. Behr – Plaintiff-Appellant

24. Nova Southeastern University, Shepard Broad College of Law, Children and Families Clinic – Appellate Counsel for Plaintiff-Appellant J.B.

25. Oostendorp, Rachel A. – Appellate Counsel for Appellants Rebekka Anne Behr and Louis H. Behr

26. Ovelmen, Richard J. – Appellate Counsel for Appellants Rebekka Anne Behr and Louis H. Behr

27. Palm Beach County Attorney General Office – Defendant-Appellee

28. Palm Beach County Criminal Conflict and Regional Counsel – Defendant-Appellee

29. Palm Beach County DCF – Defendant-Appellee

30. Palm Beach County Guardian Ad Litem Program – Defendant-Appellee

31. Palm Beach County School District – Defendant-Appellee

32. Sandra, Seder – Defendant-Appellee

33. School Board of Palm Beach County, Florida – Defendant-Appellee

34. Taggert, Stacey – Defendant-Appellee

35. Tolbert, Kristin – Defendant-Appellee


*/s/ Rachel A. Oostendorp*
Rachel A. Oostendorp
Florida Bar No. 0105450

## STATEMENT REGARDING ORAL ARGUMENT

Appellants Rebekka Behr and Louis Behr and Appellant J.B., a minor, believe that oral argument would be beneficial to the resolution of the issues on appeal which relate to the *sua sponte* dismissal with prejudice of a *pro se* complaint based on a sweeping application of the narrow *Rooker-Feldman* doctrine.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND

    CORPORATE DISCLOSURE STATEMENT ...........................................C-1

STATEMENT REGARDING ORAL ARGUMENT .............................................i

TABLE OF CONTENTS........................................................................... ii

TABLE OF CITATIONS ........................................................................v

PRELIMINARY STATEMENT ...........................................................ix

STATEMENT OF JURISDICTION..........................................................x

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE..................................................................2

I.     STATEMENT OF THE FACTS AND COURSE OF

       PROCEEDINGS BELOW ....................................................2

II.    STANDARD OF REVIEW........................................................7

SUMMARY OF ARGUMENT ...............................................................8

ARGUMENT .........................................................................................11

I.     THE *ROOKER-FELDMAN* DOCTRINE IS NARROW AND IS

       "CONFINED TO THE CASES OF THE KIND FROM THE WHICH

       THE DOCTRINE ACQUIRED ITS NAME"...............................11

A.    Development Of The *Rooker-Feldman* Doctrine In The Supreme Court.................................................................................11

B.    This Court's Treatment Of The *Rooker-Feldman* Doctrine................14

II.    THE DISTRICT COURT ERRED IN ITS SWEEPING APPLICATION OF THE *ROOKER-FELDMAN* DOCTRINE TO DISMISS WITH PREJUDICE ALL OF PLAINTIFFS' CLAIMS..............16

A.    The District Court Erred In Dismissing The Complaint For Lack Of Subject Matter Jurisdiction Without Examining *Rooker-Feldman*'s Application To Each Claim..................................16

B.    The District Court Has Subject Matter Jurisdiction Over A Number Of The Claims ........................................................................20

    1.    Procedural Due Process Claim (Count 2)..................................20

    2.    Unreasonable Search And Seizure Claim (Count 3)................22

    3.    Access To Records Claim (Count 8) .........................................24

    4.    Discrimination Claim (Count 10) .............................................25

    5.    Claims for Negligence (Count 7), Medical Malpractice (Count 15), Libel and Slander (Count 20), and Legal Malpractice (Count 21)..............................................................28

CONCLUSION .........................................................................................29

## TABLE OF CONTENTS
### (Continued)

Page

CERTIFICATE OF COMPLIANCE ........................................................................30

CERTIFICATE OF SERVICE .................................................................................31

# TABLE OF CITATIONS

**Page**

**Cases**

*Amos v. Glynn Cty. Bd. of Tax Assessors*,

    347 F.3d 1249 (11th Cir. 2003) ........................................................15

*Ankenbrandt v. Richards*,

    504 U.S. 689 (1992)..............................................................10, 16, 17

*Antoine v. Verin*,

    746 F. App'x 802 (11th Cir. 2018) ..................................................26

*Brokaw v. Weaver*,

    305 F.3d 660 (7th Cir. 2002) ......................................................21, 22

*Casale v. Tillman*,

    558 F.3d 1258 (11th Cir. 2009) ........................................................17

*Christophe v. Morris*,

    198 F. App'x 818 (11th Cir. 2006) ........................................18, 19, 23

*District of Columbia Court of Appeals v. Feldman*,

    460 U.S. 462 (1983)................................................................11, 12

*Ernst v. Child and Youth Servs. of Chester Cty.*,

    108 F.3d 486 (3d Cir. 1997) ......................................................26, 27

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

    544 U.S. 280 (2005).....................................................................*passim*

*Goodman ex rel. Goodman v. Sipos*,

    259 F.3d 1327 (11th Cir. 2001) ...................................................*passim*

*Kohler v. Garlets*,

    578 F. App'x 862 (11th Cir. 2014) ...................................................19

*Lance v. Dennis*,

    546 U.S. 459 (2006)......................................................................*passim*

*Liedel v. Juvenile Court of Madison Cty., Ala.*,

    891 F.2d 1542 (11th Cir. 1990) .................................................18, 19

*Molina v. Aurora Loan Services, LLC*,

    635 F. App'x 618 (11th Cir. 2015) ...................................................26

*Nicholson v. Shafe*,

    558 F.3d 1266 (11th Cir. 2009) ..................................................7, 15

*Phifer v. City of New York*,

    289 F.3d 49 (2d Cir. 2002) .........................................................26, 27

*Rooker v. Fidelity Trust Co.*,

    263 U.S. 413 (1923)......................................................................11, 12

*Siegel v. LePore*,

234 F.3d 1163 (11th Cir. 2000) (en banc) .........................................................14

*Staley v. Ledbetter*,

837 F.2d 1016 (11th Cir. 1988) .................................................................18, 19

*Tannenbaum v. United States*,

148 F.3d 1262 (11th Cir. 1998) ........................................................................7

**Statutes**

28 U.S.C. § 1332 .................................................................................................17

28 U.S.C. § 1367 .................................................................................................25

28 U.S.C. § 1915 ..................................................................................................6

42 U.S.C. § 1983 .........................................................................................*passim*

Fla. Stat. § 39.01(58) ..........................................................................................22

Fla. Stat. § 119.01(1) ..........................................................................................24

Fla. Stat § 119.12 ................................................................................................24

Fla. Stat. § 119.0714 ...........................................................................................24

**Rules**

Florida Rule of Judicial Administration 2.420 .......................................................24

**Other Authorities**

Thomas D. Rowe Jr. & Edward L. Baskauskas, *"Inextricably*

*Intertwined" Explicable at Last? Rooker-Feldman Analysis After*

*the Supreme Court's Exxon Mobil Decision*, 2006 Fed. Cts. L.

Rev. 1 (May 2006) ................................................................15

## <u>PRELIMINARY STATEMENT</u>

In this brief, Plaintiffs-Appellants Rebekka Behr and Louis Behr and Appellant J.B., a minor, will collectively be referred to as Appellants, Plaintiffs, or the Behrs. Defendants-Appellees James Campbell and the Palm Beach County School District will collectively be referred to as Appellees or the School District.

The record will be referred to as "DE X at Y," where "X" represents the docket number, and "Y" represents the page number. If preceded by a "§" or "¶," then the "Y" represents the section or paragraph number, respectively.

All emphasis is supplied and all internal quotation marks and citations are omitted, unless otherwise noted.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291 over this appeal from a dismissal with prejudice by the United States District Court of the Southern District of Florida.

The district court's jurisdiction was pursuant to 28 U.S.C. § 1331 because the action arose under federal law and 28 U.S.C. § 1367 affords supplemental jurisdiction over the state law claims.

## <u>STATEMENT OF THE ISSUES</u>

This appeal presents two questions for appellate review:

1.     Whether the District Court erred in *sua sponte* dismissing with prejudice a *pro se* complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine without applying the relevant standard set forth by the Supreme Court and the Eleventh Circuit to each claim.

2.     Whether the claims asserted are independent from underlying state court family proceedings for purposes of *Rooker-Feldman*, meaning the success of those claims would not require that the District Court effectively nullify the state court judgment or conclude that the state court wrongly decided the issues before it, and/or Plaintiffs did not have a reasonable opportunity to raise those claims in state court.

## STATEMENT OF THE CASE

## I. STATEMENT OF THE FACTS AND COURSE OF PROCEEDINGS BELOW

Louis Behr ("Louis") is the father of Rebekka Behr ("Rebekka") and J.B., a minor (collectively, "Appellants" or the "Behrs"). Proceeding *pro se*, Rebekka filed this action in Florida state court on January 5, 2018, against Defendants-Appellees, the School District of Palm Beach County and James Campbell, individually and in his official position as Principal of Seminole Ridge Community High School (collectively, "Appellees" or the "School District"). DE 1-2. The six-count Complaint alleged civil rights discrimination against a child with disabilities; violation of the Florida Educational Rights and Privacy Act; violation of the Florida Business Corporation Act; violation of rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth ,and Fourteenth Amendments to the U.S. Constitution; aggravated child abuse and neglect under Florida law; and negligence. DE 1-2. The School District removed the action to federal court and subsequently moved to dismiss. DE 1, 3.

Rebekka moved for referral to the Volunteer Attorney Program, DE 4, responded to the motion to dismiss, DE 6, 13, and moved to remand the action to state court. DE 12. The motion to dismiss and motion for remand were referred to the Magistrate Judge, DE 18, 31, who recommended that the motion for remand be denied and the motion to dismiss be granted with leave to file an amended

complaint. DE 32, 34. The Magistrate Judge concluded that the Complaint did not provide a short and plain statement as required by Rule 8 of the Federal Rules of Civil Procedure and that it sought relief based on wrongs done to third parties and therefore failed to state a claim for relief on behalf of Rebekka. DE 34 at 4. The District Court adopted the Report and Recommendation for both motions. DE 39.

Rebekka filed an Amended Complaint, DE 43, which added Louis and J.B. as Plaintiffs, as well as a number of additional Defendants, including governmental entities, individuals employed by those entities, and Louis' ex-wife. The District Court entered an Order striking the Amended Complaint for failure to follow the Federal Rules because the Complaint was filed after the deadline given to amend and for failure to follow the federal pleading standard set forth in the Report and Recommendation on the motion to dismiss. DE 50 at 4-6. However, the District Court gave the Behrs leave to file a Second Amended Complaint and granted their motion for leave to proceed *in forma pauperis*. DE 47, 50 at 4, 6.

The Behrs filed a Second Amended Complaint, DE 56, which alleged 30 counts, including several claims asserted under 42 U.S.C. § 1983 for violation of rights, as well as a number of state law claims. Specifically, the operative complaint alleged: violation of parental rights (Count 1), violation of due process (Count 2), unreasonable search and seizure (Count 3), hostage taking (Count 4), intentional infliction of emotional distress (Count 5), violation of familial integrity

(Count 6), negligence (Count 7), violation of the Freedom of Information Act (Count 8), violation of the right to privacy (Count 9), civil rights discrimination (Count 10), conspiracy against citizens' rights (Count 11), deprivation of rights pursuant to 18 U.S.C. § 242 (Count 12), violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 96 (Count 13), breach of contract (Count 14), medical malpractice (Count 15), violation of rights under the Fifth and Eighth Amendments of the U.S. Constitution (Count 16), torts (Count 17), breach of fiduciary duty (Count 18), request for injunctive and declaratory relief (Count 19), libel, assault, and slander (Count 20), legal malpractice (Count 21), personal injury under 18 U.S.C. § 2255 (Count 22), request for writ of mandamus (Count 23), request for writ of habeas corpus (Count 24), violation of state constitutional rights (Count 25), request for writ of coram nobis (Count 26), violation of False Claims Act (Count 27), fraud (Count 28), neglect of duty (Count 29), and judicial misconduct (Count 30).

The Behrs generally assert that several government agencies and individuals working for those agencies conspired with Louis' ex-wife (who is the mother of Rebekka, J.B., and two other daughters, Casandra and Miracle) to make false allegations, including of domestic violence and abuse, against Louis and to commence various proceedings to take away his custody of the children. These false accusations resulted in Rebekka and J.B. being removed from their home

with Louis, as well as psychological abuse against Rebekka at hands of these government agencies. *See, e.g.*, DE 56 ¶¶ 65-67, 78.

The Behrs assert a number of constitutional and tort claims that are independent from the underlying family court proceedings. For example, they seek damages under 42 U.S.C. § 1983 for (1) procedural due process violations based upon the use of falsified and coerced information as a basis for the proceedings, as well as restricted access to the courts and inadequate legal counsel for the children, DE 56 ¶¶ 78, 81; (2) unreasonable search and seizure because the Department of Children and Families and its investigator unlawfully entered Louis' home without consent and under false pretenses, DE 56 ¶¶ 83-84; and (3) discrimination in the family court proceedings based on their age, gender, religion, and disabilities, DE 56 ¶¶ 135-39, 143, 145-46, 148-49.

The Behrs also seek access to public records related to the custody determination and family law proceedings requested from several government agencies and the court. DE ¶ 121. Finally, they have asserted several tort claims for which they seek damages, including for (1) negligence for failing to fully investigate false allegations made against Louis, DE 56 ¶¶ 118-19; (2) medical malpractice for falsifying and fabricating reports and documents, DE 56 ¶¶ 184, 186; (3) slander and libel for making false statements and filings, DE 56 ¶¶ 221,

226; and (4) legal malpractice for refusing to follow directives and for conspiring with other Defendants, DE ¶¶ 228, 233.

On June 20, 2018, seven days after the Second Amended Complaint was filed, the District Court entered an Order *sua sponte* dismissing the action with prejudice. DE 57.[1] In just over one page of analysis, the District Court applied the *Rooker-Feldman* doctrine, observing that it "encapsulates and delineates the rule that district courts may not review final state-court judgments" and that the doctrine extends to constitutional claims presented or adjudicated by a state court as well as those that are inextricably intertwined with a state court judgment. *Id.* at 4.

The District Court concluded that the operative Complaint was "inextricably intertwined with decisions of the state court system regarding the proper placement of Mr. Behr's children" and that "Plaintiffs are requesting the Court review the determinations by the state that caused two of his children to be removed from his custody and determine that it was the product of falsified reports." *Id.* The Court concluded that because the Complaint was "essentially about the proper custody of his children," it lacked subject matter jurisdiction under the *Rooker-Feldman*

---

[1] As noted in the Order, because the Behrs were proceeding *in forma pauperis*, the Second Amended Complaint was subject to screening under 28 U.S.C. § 1915. DE 57 at 1. However, the Court dismissed the action based on lack of subject matter jurisdiction, not on the basis of frivolity. As set forth below, the District Court's decision is therefore reviewed *de novo*.

doctrine. *Id.* The District Court added that "[t]his is also not the first time Plaintiff Louis Behr has attempted to raise similar issues which have been dismissed under *Rooker-Feldman*," citing to a 1995 decision in the Eastern District of Pennsylvania. *Id.* at 5.

This appeal followed.[2]

## II. STANDARD OF REVIEW

A district court's determination that it lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine is reviewed *de novo*. *See Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009). Moreover, "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys" and therefore should "be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

---

[2] This Court entered an Order appointing appellate counsel on behalf of J.B., and subsequently granted Rebekka's and Louis' motion for appointment of counsel on appeal. Accordingly, the undersigned were appointed as appellate counsel for J.B. and Rebekka and Louis, respectively.

**SUMMARY OF ARGUMENT**

The issue before this Court is narrow, yet it could have sweeping consequences, particularly with regard to the test by which trial courts are to review *pro se* complaints. This appeal also raises important questions regarding a federal court's jurisdiction to review federal questions relating to family law. The District Court *sua sponte* applied the narrow *Rooker-Feldman* doctrine to dismiss with prejudice a *pro se* 30-count Complaint alleging violation of Plaintiffs' rights by various government entities and individuals.

Both the Supreme Court and this Court have cautioned against the expansive application of this jurisdictional doctrine, instructing that *Rooker-Feldman* is to apply only in those cases of the kind from which the doctrine acquired its name: for litigants seeking to directly overturn a state court judgment and for claims that are inextricably intertwined with such a judgment, meaning the claim would effectively nullify the judgment or could succeed only to the extent the state court wrongly decided the issue. *Rooker-Feldman* does not generally apply to litigants who were not parties to the state court proceedings at issue, and it only applies to those proceedings that have reached a sufficient level of finality. The District Court's whole cloth dismissal of the operative complaint without providing any basis or analysis with regard to the individual claims or parties is contrary to these directives and sets a dangerous example for courts addressing inartfully pled *pro se*

complaints. Indeed, a number of the claims asserted by Plaintiffs are not, as a matter of law, barred under *Rooker-Feldman*.

While, admittedly, success on some of the claims in the operative Complaint would necessarily imply the wrongfulness of the state court decisions (*e.g.*, the Behrs seek to expunge three state court proceedings to which Louis was a party, *see* DE 56 ¶ 264), several of the Behrs' claims assert elements and request relief that are independent of the state court proceedings. For example, the Behrs allege unreasonable search and seizure (Count 3), the type of claim this Court "readily" concluded was not inextricably intertwined with a state court custody proceeding in one of this Circuit's seminal cases on this issue. *See Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333–34 (11th Cir. 2001). The Behrs also seek access to public records and court documents (Count 8)—a claim that, if granted relief, would have no impact upon any state court judgment. The Behrs likewise assert, *inter alia*, independent claims that they were denied their rights to procedural due process (Count 2); that they were discriminated against based on age, gender, religion, and mental health status/disability (Count 10); and that government agencies and employees acted with negligence (Count 7), committed medical malpractice (Count 15), committed libel and slander (Count 20), and committed legal malpractice (Count 21). The Behrs seek damages with regard to these constitutional and tort claims.

The District Court's one-page legal analysis and one-paragraph application of the *Rooker-Feldman* doctrine to this action failed to take into consideration those claims that were independent of the custody determination, nor did it analyze any cases applying that doctrine to family law proceedings. The District Court instead relied upon *Ankenbrandt v. Richards*, a Supreme Court case that did not apply *Rooker-Feldman*, but instead broadly discussed the "domestic relations exception," a principle that "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." 504 U.S. 689, 704 (1992). Not only did the District Court disregard a number of Eleventh Circuit cases applying *Rooker-Feldman* in similar instances, the Court relied upon a domestic relations principle that is inapplicable to a number of the Behrs' claims that are independent from the custody determination.

Finally, the District Court's reference to a Pennsylvania case filed by Louis that was dismissed over 20 years ago under *Rooker-Feldman* is wholly irrelevant to this action and demonstrates the Court's uncritical haste in dismissing this case. This Circuit's precedent establishes that the District Court improperly concluded that it lacked jurisdiction over any of the Behrs' claims and erred by considering the action as a whole instead of applying the *Rooker-Feldman* standard to the claims asserted. The proper remedy is to reverse the District Court's jurisdictional

determination and remand for further proceedings on the merits. The Behrs respectfully request the Court grant such relief.

## ARGUMENT

### I.   THE *ROOKER-FELDMAN* DOCTRINE IS NARROW AND IS "CONFINED TO THE CASES OF THE KIND FROM THE WHICH THE DOCTRINE ACQUIRED ITS NAME"

#### A.   Development Of The *Rooker-Feldman* Doctrine In The Supreme Court

The Supreme Court has applied the *Rooker-Feldman* doctrine only twice to dismiss a claim for lack of subject matter jurisdiction: first in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and again sixty years later in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283, 287 (2005). In *Rooker*, the plaintiffs had alleged an adverse state-court judgment was unconstitutional and asked the federal court to declare it null and void. 263 U.S. at 414–15. The Court concluded that federal district courts lacked appellate authority over such a claim because their jurisdiction was "strictly original," and only the Supreme Court was empowered to exercise appellate authority to reverse or modify a state court judgment. *Id.* at 415–17.  In *Feldman*, the two plaintiffs petitioned the District of Columbia Court of Appeals to waive a court rule requiring that D.C. bar applicants graduate from an accredited law school. When the D.C. court denied their requests, they filed in federal district court. 460 U.S. at 465–73. The Supreme Court held

11

that to the extent the plaintiffs sought review of the D.C. court's denial of their petitions for waiver, the district court lacked subject matter jurisdiction. *Id.* at 482. Moreover, the plaintiffs' allegation that the D.C. court acted arbitrarily in denying the waiver petitions because it had a former policy of granting waivers to graduates of unaccredited schools was likewise barred because it was "inextricably intertwined" with the D.C. court's decision to deny the petitions. *Id.* at 486–87.

Addressing the proper scope of the *Rooker-Feldman* doctrine, the Supreme Court subsequently observed that, after *Feldman*, the doctrine had been "[v]ariously interpreted" and warned that lower courts at times had extended it "far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law . . . ." *Exxon Mobil*, 544 U.S. at 283. As a result, the Court explained that *Rooker-Feldman* is a narrow doctrine "confined to the cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. The Court further noted that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or

augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id.*

In *Exxon Mobil*, the plaintiff had filed its claims in federal court shortly after the relevant state court action was filed in order "to protect itself in the event it lost in state court on grounds . . . that might not preclude relief in the federal venue." *Id.* at 293–94. In concluding that *Rooker-Feldman* did not prevent the district court from exercising jurisdiction over Exxon Mobil's claims, the Court observed that a district court is not prevented from "exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. Instead, if "a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," the court has jurisdiction, but should ultimately and separately determine if principles of preclusion apply. *Id.* (internal alteration, quotation marks, and citation omitted).

The next term, the Supreme Court further limited *Rooker-Feldman*, clarifying that it is "inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." *Lance v. Dennis*, 546 U.S. 459, 464 (2006). The Court rejected the district court's application of *Rooker-Feldman* against parties who were in privity with a party to the earlier state court action, concluding the district court "erroneously conflated

preclusion law with *Rooker-Feldman*" and that such an analysis "risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments." *Id.* at 465–66 (emphasis in original).[3]

### B. **This Court's Treatment Of The *Rooker-Feldman* Doctrine**

This Court has acknowledged that the *Rooker-Feldman* doctrine "extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc). "A federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it,'" *id.* (citation omitted), or if the requested relief "would effectively nullify [the] state order[]." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001) (citation omitted). However, "even if a claim is 'inextricably intertwined' with the state court's judgment, the doctrine does not apply if the plaintiff had no 'reasonable opportunity to raise his federal claim in state proceedings.'" *Id.* at 1332 (citation omitted).

---

[3] The Court having so limited the doctrine, Justice Stevens' dissent in *Lance* questioned its viability in the future, declaring that "Justice Ginsburg's lucid opinion" in *Exxon Mobil* "finally interred the so-called '*Rooker-Feldman* doctrine'" and that the *Lance* majority had "quite properly disapprove[d] of the District Court's resuscitation of a doctrine that has produced nothing but mischief for 23 years." *Lance*, 546 U.S. at 468 (Stevens, J., dissenting).

Prior to the Supreme Court's decision in *Exxon Mobil*, this Court employed a four-part test to guide its application of the *Rooker-Feldman* doctrine, barring jurisdiction where:

> (1) the party in federal court is the same as the party in state court . . . ; (2) the prior state court ruling was a final or conclusive judgment on the merits . . . ; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding . . . ; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment . . . .

*Nicholson v. Shafe*, 558 F.3d 1266, 1272 (11th Cir. 2009) (quoting *Amos v. Glynn Cty. Bd. of Tax Assessors*, 347 F.3d 1249, 1266 n.11 (11th Cir. 2003)).

However, following *Exxon Mobil*, this Court concluded that "[r]ather than apply *Amos*, we adhere to the language in *Exxon Mobil*, delineating the boundaries of the *Rooker-Feldman* doctrine: 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Nichols*, 558 F.3d at 1274 (quoting *Exxon Mobil*, 544 U.S. at 284).[4]

---

[4] Consistent with this analysis, scholars have advocated that, in the wake of *Exxon Mobil*, courts can—and should—"decide at least some *Rooker-Feldman* cases without making any real use of the 'inextricably intertwined concept," observing that "anyone who now *starts* with the phrase in determining whether the doctrine applies either hasn't read *Exxon Mobil* or hasn't read it right. Instead, it appears that the place to begin is the Court's distillation of the limited circumstances in which the doctrine applies." Thomas D. Rowe Jr. & Edward L. Baskauskas, *"Inextricably Intertwined" Explicable at Last? Rooker-Feldman*

*(footnote continued on next page)*

It is within this limited framework that the District Court should have analyzed the claims asserted.

## II. THE DISTRICT COURT ERRED IN ITS SWEEPING APPLICATION OF THE *ROOKER-FELDMAN* DOCTRINE TO DISMISS WITH PREJUDICE ALL OF PLAINTIFFS' CLAIMS

### A. The District Court Erred In Dismissing The Complaint For Lack Of Subject Matter Jurisdiction Without Examining *Rooker-Feldman*'s Application To Each Claim

The District Court erred in broadly applying *Rooker-Feldman* to all 30 claims asserted in the operative Complaint without examining whether any of Plaintiffs' constitutional or state law claims were independent of the state custody determination or family court proceedings. *See Lance*, 546 U.S. at 464 ("Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule."). The District Court instead relied upon *Ankenbrandt v. Richards* for the unremarkable proposition that the "domestic relations of husband and wife, parent and child" are the subject of state, not federal, laws. 504 U.S. 689, 703 (1992). *Ankenbrandt* did not apply *Rooker-Feldman*, but instead, in the context of federal diversity jurisdiction, broadly discussed the "domestic relations exception"—which "encompasses only

*Analysis After the Supreme Court's Exxon Mobil Decision*, 2006 Fed. Cts. L. Rev. 1 (May 2006).

cases involving the issuance of a divorce, alimony, or child custody decree." *Id.* at 704. The *Ankenbrandt* Court concluded this exception was not applicable (and therefore did not divest subject matter jurisdiction pursuant to 28 U.S.C. § 1332) where the lawsuit did not seek such a decree, but instead alleged that defendants committed torts against children. *Id.* Here too such an exception regarding domestic relations is inapplicable to a number of the Behrs' constitutional and tort claims, which are all independent from the custody determination.

Although the District Court did not analyze a single case that applied the *Rooker-Feldman* doctrine to claims relating to family court and custody proceedings, this Court has had a number of occasions to address the propriety of such applications.[5] In *Goodman*, for example, the plaintiff raised § 1983 claims alleging an unlawful search of her home and due process violations based on *ex parte* proceedings and threats of arrest. The claims arose out of an investigation of child neglect conducted by child services and subsequent state juvenile proceeding to remove the plaintiff's son from her custody. 259 F.3d at 1328–30. The Court recognized that the *Rooker-Feldman* doctrine *may* deprive federal courts of subject

---

[5] The Order cited to *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009), which addressed *Rooker-Feldman* in the context of contempt orders stemming from a divorce decree, but the District Court referenced that case only for the general proposition that *Rooker-Feldman* "encapsulates and delineates the rule that district courts may not review final state-court judgments." DE 57 at 4.

matter jurisdiction over claims related to child custody actions in state court, but emphasized that closer analysis was required to determine whether the claims (and which ones) in that case were barred. *Id.* at 1333.

Goodman distinguished two Eleventh Circuit cases, *Liedel v. Juvenile Court of Madison Cty., Ala.*, 891 F.2d 1542 (11th Cir. 1990), which held a mother's request for reinstatement of parental custody and psychiatric care was essentially a challenge to the final state court judgment, and *Staley v. Ledbetter*, 837 F.2d 1016 (11th Cir. 1988), which held that a request by parents for a temporary restraining order and injunction against state agencies to prevent them from enforcing a juvenile court's order would effectively nullify those orders. The Court noted that those "holdings alone do not tell us which of the three claims brought by the plaintiffs in this case are barred" and that those cases "involved far more direct attacks on the previous state court judgment than the claims in this case do." *Goodman*, 259 F.3d at 1333. As discussed further below, the Court concluded that the *Rooker-Feldman* doctrine was improperly applied to the unreasonable search claim and remanded for the district court to consider the claim's merits in the first instance. *Id.* at 1334–35 & n.8.

Similarly, in *Christophe v. Morris*, the Eleventh Circuit concluded that the district court erred by dismissing *all* of the plaintiff's claims as barred under the *Rooker-Feldman* doctrine. 198 F. App'x 818, 827 (11th Cir. 2006). The plaintiff,

proceeding *pro se*, alleged Fourth Amendment and due process claims under § 1983 against her landlord, two sheriffs, a moving company, and several county court officers. This Court affirmed the dismissal of "the majority" of her claims, but concluded that her challenge regarding the manner in which the eviction was carried out was not inextricably intertwined with the eviction. *Id.* at 825–26. This Court reversed the district court with regard to the illegal seizure claim, leaving it to the district court to decide the merits of the claim on remand. *Id.* at 827; *see also Kohler v. Garlets*, 578 F. App'x 862, 864 (11th Cir. 2014) ("Construed liberally, Mr. Kohler's complaint could also be read to raise an independent damages claim against Ms. Garlets and her attorneys based on alleged misconduct during the state foreclosure proceedings. . . . Because a challenge to the defendants' conduct in state proceedings does not necessarily seek appellate review and reversal of the state court judgment, the district court erred in ruling that such a claim was barred by the *Rooker-Feldman* doctrine.").

Here, as in *Goodman* and *Christophe*, many of the constitutional and tort claims asserted by the Behrs—including allegations of unreasonable search and seizure—were even more remote from the state court judgments than those asserted in *Liedel* and *Staley*, and should not have been dismissed under *Rooker-Feldman*. The District Court's sweeping dismissal with prejudice of the

entire Complaint with no analysis applying the narrow *Rooker-Feldman* standard to the individual claims provides basis alone for reversal.

### B. The District Court Has Subject Matter Jurisdiction Over A Number Of The Claims

#### 1. Procedural Due Process Claim (Count 2)

The Behrs allege procedural due process violations resulting from the use of falsified and/or coerced information as a basis for the proceedings and decisions and the restriction of access to the courts and denial of adequate legal counsel with regard to the children. DE 56 ¶ 78. The Behrs bring this claim under 42 § U.S.C. 1983. *Id.* ¶ 81.

In *Goodman*, this Court concluded that the district court lacked jurisdiction under *Rooker-Feldman* over two due process claims by a parent (on her own behalf and on behalf of her minor child) who lost custody of her child. 259 F.3d at 1334. Goodman asserted violation of her due process rights based upon allegations that (1) a caseworker's affidavit was false and the state court had held *ex parte* proceedings, and (2) the caseworker had threatened a family friend with arrest if he did not return the child. The Court held that the two claims were inextricably intertwined with the state court orders and judgment because the first claim would succeed only to the extent the state court wrongly decided the custody issue and the second claim was based on the same factual and legal predicate as a motion the plaintiffs filed to have the child returned to the family friend's custody. *Id.* at 1334.

Clearly, however, the *Goodman* decision was issued prior to the narrowing of the *Rooker-Feldman* doctrine created by *Exxon Mobil* and *Lance* noted above. In fact, it is a particularly good example of the expansive view of *Rooker-Feldman* and the use of the discredited inextricably intertwined factor.

With regard to Rebekka and J.B., however, this case is much more similar to the Seventh Circuit's decision in *Brokaw v. Weaver*, 305 F.3d 660 (7th Cir. 2002). In that case, the plaintiff, after she turned eighteen, filed an action alleging the defendants had conspired to cause false and negligent proceedings to be filed, resulting in her removal from her home in violation of substantive and procedural due process rights. *Id.* at 665. The Court held those claims were not barred under *Rooker-Feldman* because the plaintiff "did not have a reasonable opportunity to raise her constitutional claims in the state court child neglect proceedings." *Id.* at 668. Because the proceedings brought under the Juvenile Court Act allowed the court to "consider only the question whether the minor is abused, neglected, delinquent, in need of supervision, or independent," it did not provide the plaintiff with a mechanism to present her claim. *Id.* at 668. Moreover, although the plaintiff was "technically" a party to the juvenile proceedings, she was not present or represented by a guardian ad litem or attorney at the hearing, and therefore "did not have a reasonable opportunity to raise her constitutional claims during that proceeding." *Id.*

Given the superseding decisions of *Exxon Mobil* and *Lance*, this Court should follow the analysis in *Brokaw*. *Cf.* Fla. Stat. § 39.01(58) (defining "party" in proceedings related to children as including the child, but specifying that the presence of the child may be excused when it would not be in the child's best interest and that notice to the child may be excused when age, capacity, or other condition would render notice meaningless or detrimental to the child). The District Court therefore erred in dismissing Count 2.

### 2. Unreasonable Search And Seizure Claim (Count 3)

Count 3 for unreasonable search and seizure in violation of the Fourth, Fifth, Eight, and Fourteenth Amendments of the U.S. Constitution and Article 1, Section 12 of the Florida Constitution, alleges that the Palm Beach County Department of Children and Families and its investigator, as well as other, unidentified, defendants, entered Louis' home without permission and under false pretenses. DE 56 ¶ 83-84. Plaintiffs assert this claim pursuant to 42 U.S.C. § 1983, and allege that they suffered general and special damages as a result. DE 56 ¶ 84.

This Court has held that *Rooker-Feldman* does not bar substantially similar Fourth Amendment search and seizure claims related to state juvenile custody proceedings. In *Goodman*, the Court "readily" concluded that the plaintiff's claim alleging that the defendant unlawfully entered and searched her home without a warrant or consent was not inextricably intertwined with the custody proceeding

because the federal claim could succeed without in any way calling into doubt the state court decision. For example, no evidence or information derived from the search was introduced in the proceedings or was relied upon to take away custody and no issue involving the search was or could have been raised in the proceeding. *Id.* at 1333–34.

Similarly, in *Christophe*, although the plaintiff may have been challenging the state court order of eviction at issue, "a closer reading and liberal construction of [her] *pro se* complaint" showed that she was also claiming violation of her constitutional rights with regard to the manner in which the eviction itself was carried out. 198 F. App'x at 825–26.

The claim that the Behrs' constitutional rights were violated as a result of an unreasonable search is likewise independent and not inextricably intertwined with the state court's custody determination. Success on a Fourth Amendment search and seizure claim would not nullify or otherwise necessitate the conclusion that the custody determination was wrongly decided. Accordingly, the District Court's dismissal of Count 3 should be reversed and remanded for further consideration on the merits.

### 3. Access To Records Claim (Count 8)

Count 8 is styled as a claim under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and alleges that the School District and Palm Beach County Department of Children and Families and certain defendant jurists have failed to produce documents requested in writing and orally with regard to the state court proceedings at issue. DE 56 ¶ 121. Although styled as a FOIA request, construed liberally, it appears that this is indeed a public records request pursuant to Chapter 119 of the Florida Statutes. Under Florida law, "all state, county, and municipal records are open for personal inspection and copying by any person" and "[p]roviding access to public records is a duty of each agency." § 119.01(1), Fla. Stat. Except for a few specifically stated exemptions, public records made part of a court file are likewise open for inspection under Chapter 119. § 119.0714, Fla. Stat. As such, Plaintiffs are entitled access to the documents requested from Florida agencies and courts, absent an asserted exemption, and are permitted under Florida law to commence a civil action where, as here, there is unlawful refusal to permit the inspection or copying of a public record. § 119.12, Fla. Stat; *see also* Rule 2.420 of the Florida Rules of Judicial Administration.

Plaintiffs' claim regarding their public records requests is independent from any state custody or other family court proceedings. A request for public records does not seek review and rejection of any state court judgment, nor is it

inextricably intertwined with such judgment because its success does not require

nullification of the judgment or a declaration that the state court wrongly decided

the issues. *See Goodman*, 259 F.3d at 1333. Because the narrow *Rooker-Feldman*

doctrine does not bar Plaintiff's claim regarding access to public and court records,

the District Court should have exercised supplemental jurisdiction over the claim.

*See* 28 U.S.C. § 1367.

### 4. Discrimination Claim (Count 10)

The Behrs assert that several government entity Defendants, including the

Palm Beach and Florida Department of Children and Families, the Florida and

Palm Beach Guardian Ad Litem Program, the Palm Beach Attorney General's

Office, and the Palm Beach and Florida Inspector General's Office, discriminated

against Louis—a 58-year-old Jewish male—because of his age, gender, and

religious beliefs, DE 56 ¶¶ 132, 143; against J.B. for his religious beliefs, ¶ 143;

and against Rebekka for her religious beliefs, gender, and disabilities, including

"Bi-Polar, OCD and Asperger's." ¶¶ 143, 145. The Behrs allege that the

government entity Defendants failed to adequately and properly train, supervise,

educate, and discipline its staff and that the discrimination by Defendants impacted

the custody determination. DE 56 ¶¶ 135-39, 143,145-46, 148-49. They bring this

claim pursuant to 42 U.S.C. § 1983 and seek damages. DE 56 ¶ 151.

This Court has held, in other contexts, that discrimination and analogous equal protection claims are independent for purposes of the *Rooker-Feldman* analysis where the claim was not addressed, or otherwise considered, by the state court judgment. For example, in *Molina v. Aurora Loan Services, LLC*, this Court held that a post-judgment discrimination claim was not barred because the plaintiff's allegation that the defendants discriminated against her during the process of her loan modification was not addressed by the foreclosure judgment, nor could it have been because the discrimination occurred after the judgment. 635 F. App'x 618, 622 (11th Cir. 2015); *compare with Antoine v. Verin*, 746 F. App'x 802, 804 (11th Cir. 2018) (claim that "the judges violated [plaintiff's] equal protection rights because they incorrectly applied Alabama surface-water law in deciding her case" was barred by *Rooker-Feldman* because the claim would succeed only if the federal court determined the state court wrongly decided the issues).

In the context of custody proceedings, sister circuits have held that *Rooker-Feldman* would not bar allegations that discrimination motivated a decision to remove a child from a home. In *Phifer v. City of New York*, for example, the Second Circuit concluded such a discrimination claim was not barred because the state court did not decide the issue. 289 F.3d 49, 58 (2d Cir. 2002) (citing *Ernst v. Child and Youth Servs. of Chester Cty.*, 108 F.3d 486, 492 (3d Cir.

1997) (claim that defendants violated right to substantive due process by making recommendations to the state court out of malice and personal bias was not barred because plaintiff did not articulate those concerns in constitutional due process terms in state court and issue was never decided by the state court)).

The *Phifer* Court further held that even if the federal court found the decision had been motivated by discrimination, it "would not call into question the family court's decisions regarding neglect, custody and visitation as those decisions are based on the parents' conduct, the harm to the child, and what is in the best interest of the child." *Phifer*, 289 F.3d at 59; *see also Ernst*, 108 F.3d at 492 ("Neither an adjudication of dependency nor a determination of the appropriate disposition of a dependent child is based on the intentions or states of mind of the party seeking the dependency adjudication.").[6]

Here, the Behrs allege that discrimination by the government entities with regard to age, gender, religion, and disability motivated at least in part their actions and decision-making with regard to the custody determinations. It does not appear that the family court addressed those arguments. Moreover, consistent with *Phifer* and *Ernst*, because custody decisions are based on different standards, such as the

---

[6] While this Court in *Goodman* expressed disagreement with *Ernst*, *Goodman* did not address a discrimination or equal protection claim and, as set forth above, was decided prior to *Exxon Mobil* and *Lance*. *See Goodman*, 259 F.3d at 1333 n.7.

best interest of the child, if the discrimination claim were to succeed, it would not call into question the family court's decision. Accordingly, the Court erred in dismissing Count 10.

### 5. Claims for Negligence (Count 7), Medical Malpractice (Count 15), Libel and Slander (Count 20), and Legal Malpractice (Count 21)

The Behrs allege that the government Defendants acted with negligence by failing to fully investigate the false allegations made against Louis, and request damages as a result. DE 56 ¶¶ 118-19. They likewise allege medical malpractice against those Defendants with medical licenses for falsifying and fabricating reports and documents, and request damages. *Id.* ¶¶ 184, 186. The Behrs also allege that the Defendants slandered, libeled, and defamed Louis by fabricating and making false statements and filings, resulting in damages. *Id.* ¶¶ 221, 226. Finally, the Behrs assert a claim for legal malpractice against those Defendants who served as their legal counsel for refusing to follow their directives and for conspiring with other Defendants, resulting in damages. *Id.* ¶¶ 228, 233.

All of these tort claims for damages are independent of any custody determination and family court judgment, and none of these claims, if successful, would call into question those determinations. *See Goodman*, 259 F.3d at 1333. The District Court therefore should have exercised supplemental jurisdiction over those claims and their dismissal should be reversed and remanded.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs-Appellants Louis Behr, Rebekka Behr, and J.B. respectfully request that the Court reverse the District Court's dismissal with prejudice of the Second Amended Complaint and remand for further proceedings.

Respectfully submitted,

<table>
<tr>
<td>

*/s/ Brion Blackwelder*
Brion Blackwelder, Esq.
Florida Bar No. 395544
E-mail: brionb@nova.edu
Nova Southeastern University
Shepard Broad College of Law
Children and Families Clinic
3305 College Ave
Fort Lauderdale, Florida 33314
Tel: (954) 262-6135
Fax: (954) 262-3832

*Appellate Counsel for*
*Appellant J.B., a minor*

</td>
<td>

*/s/ Rachel A. Oostendorp*
Richard J. Ovelmen, Esq.
Florida Bar No. 284904
Rachel A. Oostendorp, Esq.
Florida Bar No. 0105450
E-mail: roostendorp@carltonfields.com
Carlton Fields, P.A.
100 SE Second Street, Suite 4200
Miami, Florida 33131
Tel: (305) 530-0050
Fax: (305) 530-0055

*Appellate Counsel for Appellants*
*Rebekka Behr and Louis Behr*

</td>
</tr>
</table>

## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Eleventh Circuit Rule 28-1. Excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 6,547 words and uses a Times New Roman 14 point font and contains 572 lines of text.

/s/ *Rachel A. Oostendorp*
Rachel A. Oostendorp
Florida Bar No. 0105450

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 31, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record this day via transmission of Notices of Electronic Filing generated by CM/ECF to:

Brion Blackwelder, Esq.
Florida Bar No. 395544
E-mail: brionb@nova.edu
Nova Southeastern University
Shepard Broad College of Law
Children and Families Clinic
3305 College Avenue
Fort Lauderdale, Florida 33314
Tel: (954) 262-6135
Fax: (954) 262-3832

*Appellate Counsel for Appellant J.B., a minor*

Sean Fahey, Esq.
Florida Bar No. 101083
Jon Erik Bell, Esq.
Florida Bar No. 328900
School District of Palm Beach County
3300 Forest Hill Blvd., Ste. C-216
West Palm Beach, Florida 33406
Tel: (561) 434-8750
Fax: (561) 434-8105

*Counsel for Appellees James Campbell and Palm Beach County School District*

Shawntoyia N. Bernard, Esq.
Florida Bar No. 651664
School District of Palm Beach County
3300 Forest Hill Blvd., Suite C-216
West Palm Beach, Florida 33406
Tel: (561) 434-8750
Fax: (561) 434-8105

*Counsel for Appellee Palm Beach County School District*

/s/ *Rachel A. Oostendorp*
Rachel A. Oostendorp
Florida Bar No. 0105450