IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**REBEKKA BEHR, ET AL.,**

**Plaintiffs/Appellants,**

**vs.**

**JAMES CAMPBELL, ET AL.,**

**Defendants/Appellees.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
DC Case Number: 9:18-cv-80221-RLR

---

**BRIEF OF APPELLEES JAMES CAMPBELL
AND PALM BEACH COUNTY SCHOOL DISTRICT**

---

Sean Fahey, Esq.
Florida Bar No.:  0101083
Office of General Counsel
School Board of Palm Beach County
3300 Forest Hill Boulevard, Ste. C-331
West Palm Beach, FL 33406
Telephone:  (561) 434-8746
Facsimile:   (561) 434-8105
sean.fahey@palmbeachschools.org
**Counsel for Appellees James Campbell and Palm Beach County School District**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations known to the undersigned that have an interest in the outcome of this case or appeal:

Avossa, Robert

Behr, Louis H.

Behr, Rebekka Anne

Bell, Jon E.

Bernard, Shawntoyia N.

Blackwelder, Brion

Campbell, James

Carlton Fields, P.A.

Fahey, Sean C.

Fennoy, Donald

Hopkins, Hon. James

J.B., minor child, by and through Father, Louis H. Behr

Nova Southeastern University, Shepard Broad College of Law, Children and Families Clinic

Oostendorp, Rachel A.

Ovelmen, Richard J.

Reinhart, Hon. Bruce

Rosenberg, Hon. Robin

School Board of Palm Beach County, Florida

School District of Palm Beach County, Florida

**STATEMENT REGARDING ORAL ARGUMENT**

Appellees James Campbell and Palm Beach County School District do not request oral argument in this appeal.

# TABLE OF CONTENTS

Pages

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................. i

TABLE OF CONTENTS ....................................................................................... ii

TABLE OF CITATIONS ...................................................................................... iv

STATEMENT OF THE CASE ............................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................... 13

ARGUMENT ...................................................................................................... 17

I. **This Court Should Affirm Dismissal of the Second Amended Complaint Pursuant to the *Rooker-Feldman* Doctrine.** ...................... 17

   A. The Framework for *Rooker-Feldman* Analysis in this Circuit .......... 17

   B. Appellants' Arguments on Appeal .................................................... 19

   1. *Dismissal of the Second Amended Complaint was Proper Because Appellants' Claims, at their Heart, Challenge State Court Decisions.* ................................................................................. 20

   2. *Appellants Have not Shown that Any Federal Claims in the Second Amended Complaint Were not Inextricably Intertwined with State Court Decisions.* ............................................................... 22

   a. Count 2 – Due Process ....................................................... 23

   b. Count 3 – Unreasonable Search and Seizure ..................... 27

   c. Count 10 – Discrimination ................................................. 29

   d. State Law Claims ............................................................... 33

II.     **Even if Any of the Federal Claims Identified by Appellants Survive, this Court Should Affirm the Dismissal of Dr. Campbell and the School District.** .................................................................................... 34

III.    **The Second Amended Complaint Was Subject to Dismissal as a Shotgun Complaint and Under Federal Rule of Civil Procedure 41(b).** .............................................................................................. 39

CONCLUSION ................................................................................... 45

CERTIFICATE OF COMPLIANCE ................................................... 46

CERTIFICATE OF SERVICE ............................................................ 47

# TABLE OF CITATIONS

**Cases**

*A.Z. v. State,*

    383 So. 2d 934 (Fla. 5th DCA 1980) ................................................. 27

*Alliant Tax Credit 31, Inc v. Murphy,*

    924 F.3d 1134 (11th Cir. 2019) ...................................................... 17

*Alyshah v. United States,*

    241 F. App'x 665 (11th Cir. 2007) ................................................. 34

*Arrington v. Green,*

    757 F. App'x 796 (11th Cir. 2018) ............................................ 41, 42

*Ashcroft v. Iqbal,*

    556 U.S. 662 (2009) .................................................................. 34

*Bell Atl. Corp. v. Twombly,*

    550 U.S. 544 (2007) .................................................................. 34

*Betty K Agencies, Ltd. v. M/V MONADA,*

    432 F.3d 1333 (11th Cir. 2005) ...................................................... 43

*Blue Cross and Blue Shield of Md., Inc. v. Weiner,*

    868 F.2d 1550 (11th Cir. 1989) ...................................................... 27

*Bonanni Ship Supply, Inc. v. United States,*

    959 F.2d 1558 (11th Cir. 1992) .................................................. 34, 35

*Brigham v. Schlesinger*,

   437 F. App'x 822 (11th Cir. 2011) ....................................................... 25

*Campbell v. Air Jamaica Ltd.*,

   760 F.3d 1165 (11th Cir. 2014) .......................................................... 43

*Casale v. Tillman*,

   558 F.3d 1258 (11th Cir. 2009) .................................................... 18, 19

*Christophe v. Morris*,

   198 F. App'x 818 (11th Cir. 2006) ...................................................... 29

*\*Dale v. Moore*,

   121 F.3d 624 (11th Cir. 1997) ..................................................... 30, 31

*Danley v. Allen*,

   480 F.3d 1090 (11th Cir. 2007) .......................................................... 22

*Dep't of Children & Families v. T.S.*,

   154 So. 3d 1223 (Fla. 4th DCA 2015) ................................................. 26

*District of Columbia Court of Appeals v. Feldman*,

   460 U.S. 462 (1983) ............................................................................. 11

*Doe v. Florida Bar*,

   630 F.3d 1336 (11th Cir. 2011) .......................................................... 17

*Ernst v. Child & Youth Servs. of Chester Cty.*,

   108 F.3d 486 (3d Cir. 1997) ............................................................... 32

*Estate of Amergi ex rel. Amergi v. Palestinian Auth.*,

    611 F.3d 1350 (11th Cir. 2010) ............................................................ 36

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

    544 U.S. 280 (2005)..................................................................... 17, 21

*\*Goodman ex rel. Goodman v. Sipos*,

    259 F.3d 1327 (11th Cir. 2001) ...................................................Passim

*\*Jackson v. Bank of Am., N.A.*,

    898 F.3d 1348 (11th Cir. 2018) ............................................... 41, 42, 43

*Johnson v. De Grandy*,

    512 U.S. 997 (1994)........................................................................... 17

*\*Khalil v. New Jersey Div. of Child Prot. & Permanency*,

    594 F. App'x 88 (3d Cir. 2015) ..................................................... 28, 32

*Lindsay v. Adoption by Shepherd Care, Inc.*,

    551 F. App'x 528 (11th Cir. 2014)...................................................... 25

*May v. Capote*,

    149 F. App'x 913 (11th Cir. 2005)...................................................... 24

*\*May v. Morgan Cty. Georgia*,

    878 F.3d 1001 (11th Cir. 2017) ........................................ 13, 19, 20, 21

*Mickens v. 10th Judicial Circuit Court*,

    458 F. App'x 839 (11th Cir. 2012)...................................................... 24

*Molina v. Aurora Loan Servs., LLC,*

    635 F. App'x 618 (11th Cir. 2015) ....................................................... 33

*Parker v. Scrap Metal Processors, Inc.,*

    468 F.3d 733 (11th Cir. 2006) ..................................................... 36, 37

*Phifer v. City of New York,*

    289 F.3d 49 (2d Cir. 2002) .............................................................. 32

*Ray v. Spirit Airlines, Inc.,*

    836 F.3d 1340 (11th Cir. 2016) ....................................................... 34

*Rooker v. Fidelity Trust Co.,*

    263 U.S. 413 (1923).......................................................................... 11

*Sapuppo v. Allstate Floridian Ins. Co.,*

    739 F.3d 678 (11th Cir. 2014) ....................................................... 20

*Siegel v. LePore,*

    234 F.3d 1163 (11th Cir. 2000) ..................................................... 12

*Staton v. McMillan,*

    597 So. 2d 940 (Fla. 1st DCA 1992) ............................................. 38

*Sweet Pea Marine, Ltd. v. APJ Marine, Inc.,*

    411 F.3d 1242 (11th Cir. 2005) ..................................................... 28

*Tannenbaum v. United States,*

    148 F.3d 1262 (11th Cir. 1998) ..................................................... 43

*Target Media Partners v. Specialty Mktg. Corp.,

   881 F.3d 1279 (11th Cir. 2018) ................................................................. Passim

Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta,

   701 F.3d 669 (11th Cir. 2012) ..................................................... 35, 37

Vibe Micro, Inc. v. Shabanets,

   878 F.3d 1291 (11th Cir. 2018) .................................................... 39, 40

Weiland v. Palm Beach Cty. Sheriff's Office,

   792 F.3d 1313 (11th Cir. 2015) ....................................... 16, 40, 41, 42

Whitehurst v. Wal-Mart,

   306 F. App'x 446 (11th Cir. 2008) ..................................................... 43

World Holdings, LLC v. Fed. Republic of Germany,

   701 F.3d 641 (11th Cir. 2012) .................................................... 37, 38

## Statutes

28 U.S.C. § 1367 ................................................................................. 36, 38
§ 39.01(58), Fla. Stat. (2019) ................................................................. 26
§ 39.301(7), Fla. Stat. (2013) .................................................................. 9
§ 39.301(18), Fla. Stat. (2013) .......................................................... 11, 38
§ 119.07(1)(a), Fla. Stat. (2018) ........................................................... 38
§ 1006.061, Fla. Stat. (2013) ................................................................. 11

## Rules

Federal Rule of Civil Procedure 41(b) .............................. 39, 41, 43, 44
Federal Rule of Civil Procedure 8 ............................................. 1, 3, 40
Federal Rule of Civil Procedure 10 ............................................... 1
Florida Rule of Juvenile Procedure 8.210(a) ...................................... 26

**STATEMENT OF THE CASE**

This case began as an action filed by Appellant-Plaintiff Rebekka Anne Behr, proceeding *pro se*, in state court solely against Appellees-Defendants James Campbell, Ph. D., "individually and as Principal, Seminole Ridge Community High School" ("Dr. Campbell") and the Palm Beach County School District "c/o Dr. Avosso, Superintendent" ("School District"). DE 1-2. The original Complaint was 30 pages and contained six counts. *See id.*

After removing the action to state court, *see* DE 1, Dr. Campbell and the School District moved to dismiss the original Complaint. DE 3. They argued that the Complaint was an impermissible shotgun pleading which failed to comply with Federal Rules of Civil Procedure 8 and 10. *See id.* The presiding Magistrate Judge issued a report and recommendation that the motion to dismiss be granted. DE 34. The Magistrate Judge explained that the Complaint did "not provide a short and plain statement as required by Rule 8," and "to the extent it seeks relief based upon wrongs done to Plaintiff's father, Plaintiff's sister, or any other third party, it fails to state a claim for relief on behalf of the Plaintiff." *Id.* at 4.

The Magistrate Judge also provided instructions to assist Rebekka:

> Plaintiff should file an Amended Complaint that conforms to Rule 8(a)(2), which requires that the Complaint contain "a short and plain statement of the claim showing the pleader is entitled to relief." One way to do so would be by laying out a separate count for each alleged basis for recovery that includes: (1) the wrong that was done to Plaintiff, (2) which Defendant(s) committed that wrong, (3) the facts

1

establishing that wrong (including dates when the wrong occurred), (4) the law that Defendant(s) allegedly broke, and (5) the relief that the Plaintiff seeks for that wrong. The Court makes this suggestion to assist Plaintiff, who is *pro se*. …

*Id.* at 4-5.

Rebekka did not file any objections and the District Court adopted the Magistrate Judge's report and recommendation, dismissing her complaint and providing her until May 24, 2018, to file an amended complaint. DE 39.

An Amended Complaint was eventually filed and docketed on May 31, 2018. DE 43. Now there were three *pro se* Plaintiffs: Rebekka; Louis H. Behr, her father; and J.B., a minor child, purportedly "by and through Father, Louis H. Behr." *Id.* at 1. The pleading ballooned from 30 pages to 164, with more than a dozen new named Defendants in addition to Dr. Campbell and the School District, as well as eight "Jurist John Does" and 100 other John Doe defendants. *Id.* The Amended Complaint contained more than 100 pages of factual allegations spanning more than 500 paragraphs, *see id.* at 14-125, followed by thirty counts (styled as "cause[s] of action"), *see id.* at 125-57.

Dr. Campbell and the School District did not file a motion or responsive pleading directed to the Amended Complaint. Instead, on June 4, 2018, the District Court struck the Amended Complaint *sua sponte* for its failure to comply with the Federal Rules of Civil Procedure or the District Court's prior order explaining the

federal pleading standard. DE 50 at 6. "The Amended Complaint [was] 164 pages and suffer[ed] from the same infirmities as the original Complaint." *Id.* at 5.

The District Court repeated the pleading instructions from the Magistrate Judge's earlier report and recommendation. *Id.* The District Court also explained that shotgun complaints fail to comply with Federal Rule of Civil Procedure 8, and it identified shotgun complaints as those "in which the general factual allegations in the Complaint are realleged and incorporated by reference into each claim for relief, making it impossible to know which factual allegations correspond to which claims for relief against which defendants." *Id.* The District Court further explained that a complaint needs to "give the defendant notice as to the claim being asserted against him and the grounds on which it rests" and that, "in a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient to permit the defendants, or the Court, to ascertain exactly what a plaintiff is claiming." *Id.* The District Court provided Appellants leave to "file a Second Amended Complaint that complies with the Federal Rules and the Court's Order at docket entry 34[.]" *Id.* at 6.

Appellants-Plaintiffs filed their Second Amended Complaint on June 20, 2018. DE 56. The Second Amended Complaint was 75 pages long and again brought against more than a dozen named Defendants, as well as eight "Jurist John Does"

and 100 other John Doe Defendants, with thirty counts. *See id.* The named

Defendants included Melissa K. Brooks, Mr. Behr's former spouse and Rebekka and

J.B.'s mother; Patricia L. Franklin, also Mr. Behr's former spouse; the Florida and

Palm Beach County Departments of Children and Families ("DCF") and

investigators working on behalf of DCF or related entities; the Florida and Palm

Beach County Guardian Ad Litem programs; the Florida and Palm Beach County

Attorney General offices; the Palm Beach County Criminal Conflict and Civil

Regional Counsel; multiple individual attorneys; the Florida Office of Inspector

General; a forensic psychologist; a "Supervisor of Child Home Society and/or

ChildNet, Inc."; Dr. Campbell; and the School District. *Id.* ¶¶ 6-23.

With regard to the form of the Second Amended Complaint, despite the

District Court's warning about realleging and incorporating factual allegations into

each claim for relief, DE 50 at 5, Appellants again did just that for every single

count.[1] Thus, by the beginning of the 30th count, Appellants "re-allege[d] and

incorporate[d] by reference the allegations contained in paragraphs 1 – 294 of the

second amended Complaint," which included all 29 of the previous counts. DE 56

¶ 295.

---

[1] *See* DE 56 ¶¶ 72, 79, 82, 85, 98, 104, 109, 120, 125, 130, 152, 160, 164, 168, 175, 183, 187, 195, 204, 209, 220, 227, 234, 243, 247, 251, 262, 271, 280, 286, 295.

Appellants similarly failed to follow fully the District Court's instruction about specific allegations for each defendant and its warning against lumping multiple defendants together in generalized allegations. DE 50 at 5. The Second Amended Complaint contains many vague references to "Defendants" or "individual Defendants" without specifying what each of the named Defendants did.[2] Each of the counts fails to identify clearly the particular defendants to which it applies.

Turning to what is alleged in the Second Amended Complaint, Melissa K. Brooks moved in with Mr. Behr and her mother when she was 15 years old. DE 56 ¶ 52. At "17 ½ years old," Ms. Brooks began "trying to seduce Mr. Behr" and, eventually, the two became "emotionally involved" and "married 2 weeks after Ms. Brooks 18th birthday." *Id.* Their relationship lasted over 20 years and produced five children, though one child was lost. *Id.*

At some point, Ms. Brooks began having an extra-marital affair, and her "paramour" (as Appellants describe him) "manipulate[d]" Ms. Brooks into abandoning Mr. Behr and their children, Rebekka, J.B., Miracle, and Casandra. *Id.* ¶ 53 (page 16). The "paramour" sexually abused 14-year-old Cassandra, and Mr.

---

[2] *See* DE 56 ¶¶ 53 (page 17), 56, 71; 73, 78, 80, 82 (pages 24 through 25); 75-78 (on pages 25 through 26); 86-93, 96-97, 99, 101-03, 105, 107-08, 112, 116-19, 126, 131-32, 134, 136-38, 145-46, 149-50, 153-55, 161-63, 165, 169-73, 176, 181, 185, 188-89, 191-93, 196, 198-202, 205-07, 210; 214-18 (on page 52); 221, 223-25, 228, 232, 235, 237-41, 248-49, 252, 254, 259-60, 266, 269, 272-78, 281, 283-84, 287, 289-93, 302.

Behr filed "numerous complaints" with the Palm Beach County DCF, the Florida Inspector General's Office, and two other John Doe defendants. *Id.* ¶ 52 (pages 16 through 17).

Appellants allege that the result of Mr. Behr's complaints was "a full swing war against Mr. Behr using the judicial system with falsified reports, falsified court orders ('sealed'), perjury but not limited to," in purported retaliation for Mr. Behr's complaints against various Defendants. *Id.* ¶ 53; *see also id.* ¶¶ 80-82 (page 25). The remainder of the Second Amended Complaint details this alleged "war" and attacks the legitimacy of state judicial proceedings involving Louis Behr and the four children, Rebekka, J.B., Casandra, and Miracle.

Appellants summarize their case as being about "the typical situation herein State of Florida where one parent fabricates malicious statements of child abuse against the other parent to harass, defame other parent to gain custody and child support." *Id.* ¶ 59 (page 20). They also contend that Ms. Brooks and her attorney were motivated "to prevent Ms. Brooks from paying Mr. Behr child support" and that Ms. Brooks and Ms. Franklin (both former spouses of Mr. Behr) had a "vendetta against Mr. Behr for his rejection of both women." *Id.* ¶ 35.

Though the exact details are not always provided, Appellants unmistakably attack the outcomes of state court proceedings. For instance, they contend that "the

wheels of injustice" were set in motion when a "false 'Special Injunctive Relief from Domestic Abuse'" was issued after Mr. Behr texted he "Wants a Divorce." *Id.* ¶ 266.

Appellants also challenge the actions of Ms. Hudson, a DCF investigator, during proceedings involving the custody or placement of the Behr children. They allege that she "supported Ms. Brooks as the better parent with no factually specific articulated reason," which "permit[ed] Miracle and Casandra to live with Ms. Brooks and paramour," and that Ms. Hudson also "set-up" a "corruption, conspiracy, fraudulent cover-up, to endorse Ms. Brook[s] and abuse Plaintiffs'." *Id.* ¶ 65. A court order is described which gave Ms. Brooks "100% custody of Casandra, denying Mr. Behr any communication or visitation rights[.]" *Id.* ¶ 267. Appellants describe Miracle and Casandra as being "imprisoned with Ms. Brooks …." *Id.* ¶ 189.

According to Appellants, the "procedures" used in a child abuse investigation by various Defendants "were fabricated and falsified reports and documents, fraudulent court orders and subsequent removal of only 2 of 4 children from only Mr. Behr and assignment of 'temporary guardians'…." *Id.* ¶ 69. They allege efforts by Ms. Hudson designed to influence Rebekka to make a "statement Ms. Hudson insisted on against Mr. Behr[.]" *Id.* ¶ 66. They similarly allege that unspecified Defendants "detained" J.B. and Rebekka for the purpose of "coerc[ing]" Ms. Brooks to "waive her right to trial by jury" and "plead Guilty." *Id.* ¶¶ 86-87.

Various Defendants also "fabricated, falsified reports, documents, records, court orders, [and] had medical records changed" to make false claims against Mr. Behr about potential harm to Rebekka and J.B., and that Ms. Hudson committed perjury during an emergency shelter hearing on May 20, 2014. *Id.* ¶ 67-68; *see also id.* ¶ 184. And various Defendants "den[ied] to hold hearing on full 'Emergency Shelter,' falsif[ied] information in application for Emergency Shelter Hearing, [and] falsif[ied] information in Petition for Adjudication for Dependency[.]" *Id.* ¶ 70.

The Appellants also allege that, in state court proceedings, the Behr children were deprived of access to the court and their right to participate in hearings because they were "without legal counsel or without competent legal counsel when assigned to 2 of 4 minor children," and that Mr. Behr's counsel was "incompetent or in collusion with all Defendants." *Id.* ¶ 78 (pages 25 and 26), ¶ 80 (page 27). Rebekka and J.B. were ultimately placed in foster care for over a year and a half. *Id.* ¶ 189. Another court proceeding resulted in Ms. Brooks being awarded custody of J.B., though Mr. Behr later regained full custody of J.B. *Id.* ¶ 267.

Appellants fault their legal counsel for not doing "what was in Best Interest" of Rebekka, J.B., Miracle, and Casandra. *Id.* ¶ 228. They also allege the Behr children were "threaten[ed]" to force them to make false statements against Mr. Behr, and that ultimately Mr. Behr was "found … guilty without trial." *Id.* ¶ 78 (page 26). At some unspecified point during these proceedings, Appellants also allege that

Ms. Hudson and other Defendants "enter[ed] Mr. Behr's home without permission and under false pretense[.]"[3] *Id.* ¶ 83.

Appellants describe the product of Defendants' "collusion" and other alleged violations of law as "fraud upon the court creating unlawful discriminating court order's harming Plaintiffs' herein and harming Plaintiffs' financially, emotionally, and psychologically …." *Id.* ¶ 210, 211. They allege that Defendants defamed them "with all their fabricated, fraudulent, fraud upon the court, verbal statements prior to testifying, filings with the court, filings with Defendants'," and that the "Judicial Defendants" defamed Appellants "with all their fabricated, fraudulent, verbal statements, court orders with fraudulent statements …." *Id.* ¶¶ 221-22. They also expressly seek to have the federal court remove "all judgments placed against Plaintiffs" in the three state court cases. *Id.* ¶ 264.

Notably, in the Second Amended Complaint, Appellants had largely jettisoned the allegations against Dr. Campbell and the School District that were contained in the original Complaint. *See* DE 34 at 3-4 (summarizing allegations). Indeed, the Second Amended Complaint contains very few allegations expressly

---

[3] As discussed above, Appellants allege that Mr. Behr's former spouse made allegations of child abuse (albeit allegations that Appellants contend were untrue). *See* DE 56 ¶ 59 (page 20). Upon receiving a report of suspected child abuse, the Department of Children and Families was required to conduct an assessment to include, among other things, "a face-to-face interview with the child, other siblings, parents, and other adults in the household and an onsite assessment of the child's residence." § 39.301(7), Fla. Stat. (2013).

about conduct of Dr. Campbell or the School District. Most of the allegations describing some purported conduct by Dr. Campbell or the School District are stated at a high level of generality without supporting factual allegations. *See* DE 56 ¶¶ 47-48, 53 (page 17), 56, 60.

The only arguably specific allegations against Dr. Campbell or the School District are found in Counts 8 and 11. In Count 8, Appellants allege that the School District, among others, "had a duty upon Mr. Behr's written and verbal requests to submit all documentation involving these case matters per Freedom of Information Act and have refused to produce such documents requested." *Id.* ¶ 121. Appellants do not provide more detail about the precise records they requested from the School District, however, or when they requested them.

Buried within Appellants' 11th count, Appellants allege that Ms. Hudson, on May 19, 2014,

> went to School with two Palm Beach County Sheriff's, kidnapped and held Ms. Behr hostage, with Mr. Campbell's permission without a court order or a warrant under the false pretense Ms. Hudson wanted to interview Ms. Behr in her office, against protocol, to do interview with minor children with a representative for Ms. Behr at School Counselor's office.

*Id.* ¶ 157. Appellants take issue with what happened on May 19, 2014, because, in their view, Ms. Hudson lacked any factual or legal basis for suspecting child abuse

or danger to Mr. Behr's children, and Ms. Hudson also "had no parental permission [and] failed to contact Mr. Behr whom Ms. Behr was living with."[4] *See id.*

The District Court *sua sponte* dismissed Appellants' Second Amended Complaint with prejudice, pursuant to the *Rooker-Feldman* doctrine,[5] on June 27, 2018. DE 57. The District Court observed that Appellants themselves describe their case as "**simple**," being "the typical situation herein State of Florida where one parent fabricates malicious statements of child abuse against the other parent to harass, defame other parent to gain custody and child support." *Id.* at 2. While the District Court observed that the Second Amended Complaint "alleges thirty causes of action over seventy-five pages and more than three-hundred paragraphs," it noted that the "core" of the Second Amended Complaint is "Plaintiffs' allegations that the Defendants have been conspiring to ensure that Mr. Behr does not have access to his children." *Id.*

The District Court observed that the *Rooker-Feldman* extends to claims that are "inextricably intertwined" with state court judgments, and that "[a] federal claim

---

[4] Of note, district school boards and their employees "have a duty to comply with child protective investigations and all other provisions of law relating to child abuse, abandonment, and neglect." § 1006.061, Fla. Stat. (2013). Additionally, the statute governing child protective investigations provides that the initial interview with a child may be conducted at school, and school staff may be present for the interview under circumstances described therein. *See* § 39.301(18), Fla. Stat. (2013).

[5] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* at 4 (quoting *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc)).

The District Court concluded that the Second Amended Complaint "is inextricably intertwined with decisions of the state court system regarding the proper placement of Mr. Behr's children." *Id.* Accordingly, the District Court dismissed the Second Amended Complaint with prejudice because it "lack[ed] jurisdiction over the claims alleged in it." *Id.* at 5.

This appeal followed.

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's Order Dismissing Plaintiffs' Second Amended Complaint with Prejudice pursuant to the *Rooker-Feldman* doctrine. The heart of the Second Amended Complaint was an alleged wide-ranging conspiracy to remove Louis Behr's children, including Rebekka and J.B., from his home, which was purportedly accomplished through multiple decisions in state court. The District Court applied the proper standard, concluding that the claims in the Second Amended Complaint are "inextricably intertwined" with a state court judgment; that is, they would succeed only to the extent that the state court wrongly decided the issues before it. DE 57 at 5; *see Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1286 (11th Cir. 2018). Though Appellants ostensibly presented 30 different causes of action, this Court has instructed that a state court loser making inextricably intertwined claims "cannot avoid *Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different claim." *May v. Morgan Cty. Georgia*, 878 F.3d 1001, 1005 (11th Cir. 2017).

Given that the District Court applied the proper standard, this Court should reject Appellants' argument that reversal is appropriate simply because the District Court did not expressly engage in a claim-by-claim analysis. The District Court's Order is more than adequate to allow for meaningful appellate review. And Appellants have failed to show that any individual claims are "truly new" or

"independent" and survive the *Rooker-Feldman* bar. *Target Media Partners*, 881 F.3d at 1288.

Appellants' allegations that they were deprived of due process because of the use of falsified and/or coerced information in the state court proceedings is clearly barred in light of this Court's decision in *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327 (11th Cir. 2001). *Goodman* and the application of the "inextricably intertwined" factor in that opinion remain good law in this Circuit. Moreover, Appellants Rebekka and J.B. could have at least presented their due process claims to a Florida appellate court, meaning they fail to get around the *Rooker-Feldman* bar on the basis that they lacked a reasonable opportunity to raise those due process claims in state court.

For their search-and-seizure and discrimination claims, Appellants have failed to show that such claims are "truly new" or "independent." *Target Media Partners*, 881 F.3d at 1288. Appellants bear the burden of demonstrating that *Rooker-Feldman* does not bar their claims. The Second Amended Complaint does not allege that the entry into Mr. Behr's home played no role in the state court proceedings that Appellants challenge. The same goes for Appellants' highly conclusory allegations of discrimination on the basis of age, sex, religion, and disability. Indeed, Appellants allege that some of what they call age discrimination – focus on the age difference between Mr. Behr and his former spouse – was made an issue in the proceedings,

meaning that the corresponding claim of discrimination "was or should have been properly before the state court." *Target Media Partners*, 881 F.3d at 1286.

Appellants also contend that several state law claims were not barred by *Rooker-Feldman*. Those state law claims were properly dismissed for lack of jurisdiction, however, given that all of Appellants' federal claims were beyond the District Court's jurisdiction because of *Rooker-Feldman*.

Even if this Court agrees with Appellants about one or more of the federal claims identified in this appeal, Dr. Campbell and the School District still request that the dismissal of the claims against them and their dismissal from this action be affirmed. For those federal claims in the Second Amended Complaint that Appellants argue on appeal are not barred by *Rooker-Feldman*, there are not any clear, express allegations against Dr. Campbell or the School District. The only state law claim expressly involving the School District, meanwhile, pertains to access to public records. That claim is outside the District Court's power to exercise supplemental jurisdiction because it does not arise out of a common nucleus of operative fact with Appellants' few potentially surviving federal claims.

Alternatively, this Court should affirm the dismissal of the Second Amended Complaint with prejudice because it was an impermissible shotgun pleading filed in willful disregard of the District Court's order providing leave to file a Second Amended Complaint (DE 50). Appellants were informed of the defects in their

Amended Complaint and provided an opportunity to cure them, but they failed to make meaningful modifications in the Second Amended Complaint. Specifically, the Second Amended Complaint still realleges and incorporates by reference every preceding allegation into each claim for relief, making it impossible to know which factual allegations correspond to which claims for relief against which Defendants. Additionally, the Second Amended Complaint is replete with generalized allegations that lump multiple Defendants together. Simply put, the Second Amended Complaint, like the complaints that preceded it, fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

# ARGUMENT

## I. This Court Should Affirm Dismissal of the Second Amended Complaint Pursuant to the *Rooker-Feldman* Doctrine.

### A. The Framework for *Rooker-Feldman* Analysis in this Circuit

Generally speaking, "*Rooker-Feldman* bars a 'party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'"[6] *Alliant Tax Credit 31, Inc v. Murphy*, 924 F.3d 1134, 1147 (11th Cir. 2019) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). The Supreme Court held in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

This Circuit has incorporated the teaching of *Exxon Mobil* into its framework for applying *Rooker-Feldman*. "Consistent with the directions of the Supreme Court" in *Exxon Mobil*, this Circuit applies *Rooker-Feldman* "to bar only those

---

[6] Dr. Campbell and the School District agree with Appellants that the standard of review is *de novo* for a district court's decision that the *Rooker-Feldman* doctrine deprives it of subject matter jurisdiction. *Doe v. Florida Bar,* 630 F.3d 1336, 1340 (11th Cir. 2011).

claims asserted by parties who have lost in state court and then ask the district court, ultimately, to review and reject a state court's judgments." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285–86 (11th Cir. 2018).

Stepping back for a moment to look at the test from *Exxon Mobil*, Appellants do not appear to dispute that they are state court losers or that the state court judgments were rendered before district court proceedings commenced. Instead, Appellants' arguments on appeal focus on whether their Second Amended Complaint asked the District Court to review and reject state court judgments.

"To determine which claims invite rejection of a state court decision," this Court "continue[s] to apply an inquiry similar to the one that preceded *Exxon Mobil*." *Target Media Partners*, 881 F.3d at 1286. Specifically, this Court considers "whether a claim was either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment." *Id.* (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam)).

A federal claim is "'inextricably intertwined' if it asks to 'effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues.'" *Id.* (quoting *Casale*, 558 F.3d at 1260). Thus, this Court has summarized that the federal claims it has found to be "inextricably intertwined" are those "raising a question that was or should have been properly before the state court." *Id.*; *see also Casale*, 558 F.3d at 1261 ("We are not a clearinghouse for [a

plaintiff's] overstock arguments; if he did not offer them to the state courts—or if the state courts did not buy them—he cannot unload them by attempting to sell them to us."). But "a federal claim is not 'inextricably intertwined' with a state court judgment when there was no 'reasonable opportunity to raise' that particular claim during the relevant state court proceeding." *Target Media Partners*, 881 F.3d at 1286 (quoting *Casale*, 558 F.3d at 1260).

Put more simply, a claim should be barred if it "at its heart challenges the state court decision itself." *May v. Morgan Cty. Georgia*, 878 F.3d 1001, 1005 (11th Cir. 2017). And "a state court loser cannot avoid *Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different claim. Pretext is not tolerated." *Id.* A "truly new claim," however, will not be barred simply because it might have preclusion problems under state law. *Target Media Partners*, 881 F.3d at 1288. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (quotation marks, brackets, and ellipsis omitted).

B. Appellants' Arguments on Appeal

Appellants' arguments on appeal fall into two categories. First, they contend the District Court erred generally in its application of the *Rooker-Feldman* doctrine by "broadly applying" it rather than engaging in a claim-by-claim analysis. Init. Br.

at 16-20. Second, they identify a handful of federal (and state) claims that they contend are not barred. *Id.* at 20-28. Dr. Campbell and the School District address each of these arguments in turn.[7]

### 1. Dismissal of the Second Amended Complaint was Proper Because Appellants' Claims, at their Heart, Challenge State Court Decisions.

First, the District Court properly applied *Rooker-Feldman* to dismiss the entire Second Amended Complaint because, however Appellants might have labeled individual claims, the heart of the Complaint is a challenge to the decisions of state courts. The District Court acknowledged that the Second Amended Complaint alleges 30 causes of action, but correctly observed that the "core" of the Second Amended Complaint is "Plaintiffs' allegations that the Defendants have been conspiring to ensure that Mr. Behr does not have access to his children." DE 57 at 2. The District Court's analysis was thus consistent with this Court's instruction that whether plaintiffs "cloak[]" their pleadings "in the cloth of a different claim" is not dispositive for purposes of the *Rooker-Feldman* analysis. *May*, 878 F.3d at 1005. If a claim "at its heart challenges the state court decision itself," the claim is barred. *Id.*

---

[7] While Appellants note throughout their Brief that the District Court's dismissal was with prejudice, they do not separately raise or argue the issue of whether, if the District Court's *Rooker-Feldman* analysis was correct, something other than dismissal with prejudice was appropriate. They have accordingly abandoned that issue. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Here, the District Court found the heart in the Appellants' own words in the Second Amended Complaint. *See* DE 57 at 2. Appellants described their case as "**simple**," that is, "the typical situation … where one parent fabricates malicious statements of child abuse against the other parent to harass, defame other parent to gain custody and child support." *Id.* (quoting DE 56 ¶ 59). Indeed, the heart of the Second Amended Complaint is unmistakably an attack the legitimacy of the family and juvenile proceedings in state court involving Louis Behr, his former spouse, and their children, Rebekka, J.B., Miracle, and Casandra.

Appellants contend that the Defendants accomplished their alleged wrongful conduct through the judicial system. *See* DE 56 ¶ 53 (page 17). They challenge the conduct that resulted in judicial decisions to place Miracle, Casandra, and J.B., with Ms. Brooks, *id.* ¶¶ 65, 189, 267, and the placement of J.B. and Rebekka in foster care. *Id.* ¶ 189. Finally, they attribute their injuries to and seek damages for the conduct within the judicial proceedings, *see id.* ¶¶ 210, 211, 221-22, and they ask the federal court for "removal of all judgments" against them in three state court cases. *Id.* ¶ 264.

In short, the District Court was correct that the Appellants requested that it review the decisions of the state court and determine that they were the product of falsified reports. DE 57 at 4. That is precisely what the *Rooker-Feldman* doctrine prohibits. *See Exxon Mobil Corp.*, 544 U.S. at 284 (*Rooker-Feldman* doctrine applies

to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

Even if the District Court could somehow be faulted for not engaging in a claim-by-claim analysis, the Appellants fail to show that is a basis for reversing or vacating the Order in of itself. There is no contention, for instance, that the District Court's Order lacks a sufficient explanation to permit meaningful appellate review. *See Danley v. Allen*, 480 F.3d 1090, 1091 (11th Cir. 2007). Moreover, as explained in the next section, Appellants have failed to show that the small number of federal claims they have pulled out of the Second Amended Complaint on appeal are not barred by *Rooker-Feldman*. The District Court's Order is not due to be reversed solely because it did not expressly wade through each of the Appellants' claims.

> 2. *Appellants Have not Shown that Any Federal Claims in the Second Amended Complaint Were not Inextricably Intertwined with State Court Decisions.*

Appellants contend that some of the federal claims in Counts 2 (due process), 3 (unreasonable search and seizure), and 10 (discrimination) of the Second Amended Complaint are not barred under *Rooker-Feldman*. As discussed below, Appellants' arguments are foreclosed by this Circuit's case law or Appellants otherwise failed to carry their burden to demonstrate that *Rooker-Feldman* does not bar their claims.

a.      Count 2 – Due Process

Appellants argue that Count 2 of the Second Amended Complaint, labeled "Due Process," contains federal claims that are not barred. *See* DE 56 ¶ 78 (pages 25 through 26). They identify two allegations within that count. The first concerns the use of falsified and/or coerced information as a basis for the state court proceedings and decisions. The second concerns restriction of access to the courts and denial of adequate legal counsel with regard to the children.

With regard to the claim about falsified and/or coerced information, Appellants acknowledge, as they must, that this Court has concluded that virtually identical claims were barred by *Rooker-Feldman*. *See Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1334-35 (11th Cir. 2001). In *Goodman*, a caseworker for the Georgia Department of Family and Children Services signed an affidavit that was filed in support of an ex parte petition seeking custody of a child. *Id.* at 1330. A state juvenile court subsequently issued an order taking custody of the child away from the mother. *Id.* The mother and son then brought a federal lawsuit, alleging that the affidavit was "intentionally or recklessly false" and arguing that the affidavit and ex parte state court proceeding violated their federal due process rights. *Id.*

This Court concluded that the due process claim was barred by *Rooker-Feldman*. *Id.* at 1334-35. The plaintiffs' contentions struck "at the heart of the state court's proceedings and judgment, because the state court decided to take away [the

mother's] custody of [the child] only after finding [the caseworker's] affidavit to be credible and finding that the ex parte order was justified." *Id.* at 1334. Thus, the claim would "succeed[] only to the extent that the state court wrongly decided the custody issue." *Id.* (quotation marks omitted).

Appellants do not argue that *Goodman* is distinguishable, but instead contend that this Court should disregard it because it predated *Exxon Mobil* and applied what they describe as "the discredited inextricably intertwined factor." Init. Br. at 21. Whether a federal claim is "inextricably intertwined" with a state court judgment has remained part of the *Rooker-Feldman* analysis in this Circuit long after *Exxon Mobil*, however. *See Target Media Partners*, 881 F.3d at 1286. Indeed, just last year in *Target Media Partners*, this Court favorably cited *Goodman*, summarizing the pertinent part of its holding as being that "[t]he two barred claims involved challenges to the legality of evidence and proceedings used by the state court, both issues that were or could have been decided by the state court." *Id.* at 1288. Simply put, *Goodman* remains good law in this Circuit and warrants the conclusion that Appellants' claims that false, fraudulent, or coerced information was used as the basis for the state court decisions is barred by *Rooker-Feldman*.[8]

---

[8] The Court has also concluded that similar claims to those in the Second Amended Complaint were barred in multiple unpublished decisions. *See Mickens v. 10th Judicial Circuit Court*, 458 F. App'x 839, 840-41 (11th Cir. 2012) (*Rooker-Feldman* barred claims by plaintiffs that the defendants, among other things, "conspired to deprive fraudulently the [plaintiffs] of their property, conspired to commit fraud

Appellants appear to contend, in light of the allegations that the children did not have adequate legal counsel, that Rebekka and J.B.'s due process claims are not barred because they did not have a reasonable opportunity to raise them in state court.[9] Any argument to that effect should be rejected, however, because Appellants fail to explain "precisely which federal claims they were not able to argue at the state level and what the reasons for that inability were." *Brigham v. Schlesinger*, 437 F. App'x 822, 823–24 (11th Cir. 2011) (unpublished) (affirming dismissal on *Rooker-Feldman* grounds). Instead, the allegations about the adequacy of counsel in the Second Amended Complaint are vague, merely describing counsel as not "adequate" and suggesting that they did not follow unspecified "directives" of their clients or do what was in the "Best Interest" of the children. DE 56, ¶ 78 (pages 25 through 26), ¶ 228.

In any event, it appears that what this Court found to be a reasonable opportunity in *Goodman* was satisfied here. *See* 259 F.3d at 1334. The Court found

---

upon the court, and conspired to deprive them of due process"); *May v. Capote*, 149 F. App'x 913, 917 (11th Cir. 2005) (claim that state court "relied on fraudulent documents from the defendants" in rendering its judgments was inextricably intertwined with those judgments because the federal court "would have to find that the state court wrongly determined the documents were not fraudulent.").

[9] To the extent that Appellants contend that their claim about denial of adequate legal counsel should independently survive, it too would be barred by the *Rooker-Feldman* doctrine. *See Lindsay v. Adoption by Shepherd Care, Inc.*, 551 F. App'x 528 (11th Cir. 2014) (unpublished) (affirming district court's determination that plaintiff's "claim he was denied a right to counsel" in a state court proceeding terminating his parental rights was barred by *Rooker-Feldman*).

that plaintiffs there had a reasonable opportunity because they "were both parties to the state court proceeding, and with the exception of the initial hearing on DFCS's ex parte petition to take custody, they were present and participated in the state court proceedings." *Id.* Here, Appellants do not contend that Rebekka and J.B. were not parties to the state court proceedings (particularly those which resulted in their placement in foster care). They acknowledge that section 39.01(58), Florida Statutes, defines a "party" to include the child, unless the child's presence is excused by order of the court, which Appellants do not clearly allege occurred in their proceedings. And Florida Rule of Juvenile Procedure 8.210(a) provides that the parties in a dependency proceeding "shall include the petitioner, the child, the parent(s) of the child, the department, and the guardian ad litem or the representative of the guardian ad litem program, when the program has been appointed." Appellants also do not clearly contend that they were not participants in the proceedings, instead contending they were deprived of their right to participate in the hearings because of lack of or inadequate counsel. *See* DE 56, ¶ 78.

The *Goodman* Court also noted that Georgia law permitted constitutional challenges to be brought in juvenile court and to be reviewed on appeal, citing to a Georgia state case which considered a constitutional challenge to a juvenile court order on appeal from juvenile court. 259 F.3d at 1334. So too do Florida appellate courts entertain constitutional challenges to dependency proceedings. *See Dep't of*

*Children & Families v. T.S.*, 154 So. 3d 1223, 1226-27 (Fla. 4th DCA 2015) (reversing order dismissing dependency petition because child was not provided adequate notice and opportunity to be heard); *A.Z. v. State*, 383 So. 2d 934, 934-35 (Fla. 5th DCA 1980) (reversing adjudication of dependency where hearing did not provide due process). At the very least, then, Appellants could have raised their due process challenges on appeal, and "a party's ability to raise a claim on appeal constitute[s] a reasonable opportunity to raise the claim." *Blue Cross and Blue Shield of Md., Inc. v. Weiner,* 868 F.2d 1550, 1555 (11th Cir. 1989).

In short, this Court's precedent in *Goodman* remains good law and warrants the affirmance of the District Court's dismissal of Appellants' due process claims pursuant to *Rooker-Feldman*.

b.      Count 3 – Unreasonable Search and Seizure

The next claim Appellants contend is not barred is the claim in Count 3 involving an unreasonable search and seizure. Appellants allege that the Palm Beach County Department of Children and Families, Ms. Hudson, and four "John Doe" Defendants "enter[ed] Mr. Behr's home without permission and under false pretense[.]"[10] DE 56 ¶ 83. No other details about the entry are provided.

---

[10] Appellants do not implicate Dr. Campbell or the School District in the alleged unlawful entry. *See* DE 56 ¶¶ 83-84.

Appellants rely primarily on *Goodman* to argue that their claim about the search and seizure is independent of their other claims more directly challenging the legitimacy or correctness of state court decisions. In *Goodman*, however, the Court's conclusion that the claim about the search was not inextricably intertwined turned on the crucial fact that "no evidence or other information derived from the search was introduced in the state court proceedings or was relied upon by the court when it decided to take away [the mother's] custody of [the child]." 259 F.3d at 1334. Accordingly, "[n]o issue involving the search was or could have been raised in the custody proceeding" and the search claim could "succeed without in any way calling into doubt the state court decision." *Id.*

Appellants cannot rely on *Goodman* here. "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). "It therefore falls to [Appellants], as the part[ies] asserting jurisdiction, to demonstrate that the *Rooker–Feldman* doctrine does not apply to [their] claims arising out of the family court proceedings." *Khalil v. New Jersey Div. of Child Prot. & Permanency*, 594 F. App'x 88, 90 (3d Cir. 2015) (unpublished) (reviewing order dismissing complaint).

Appellants fail to demonstrate that *Rooker-Feldman* does not apply to the claim involving the entry into Mr. Behr's home. It is not alleged in the Second

Amended Complaint, nor have Appellants otherwise shown through their arguments on appeal, that "no evidence or other information derived" from the allegedly unlawful entry into Mr. Behr's home "was introduced in the state court proceedings or was relied upon by the court" in making its determinations. *Goodman*, 259 F.3d at 1334. Accordingly, this Court should affirm the dismissal of Count 3 pursuant to *Rooker-Feldman*. [11]

c.    Count 10 – Discrimination

The final federal claims that Appellants contend are not barred are those alleging discrimination in Count 10.[12] In Count 10, Appellants make largely conclusory allegations that unspecified Defendants discriminated against them. They allege that Defendants discriminated against Rebekka's "medical, educational rights because she is female and has disabilities." DE 56 ¶ 145. They also allege that Mr. Behr's "right as a 58-yr. old, male and being Jewish to be treated equally without discrimination" was violated. *Id.* ¶ 132. The Second Amended Complaint also

---

[11] *Christophe v. Morris*, 198 F. App'x 818, 826-27 (11th Cir. 2006) (unpublished), cited by Appellants, is similarly distinguishable because the plaintiff there challenged alleged conduct by the defendants after the state court judgment was rendered. Appellants do not allege in the Second Amended Complaint that the entry into Mr. Behr's home occurred after the state court proceedings had concluded.

[12] While Count 10 includes some vague, catch-all references to all Defendants, *see* DE 56 ¶¶ 131-32, 137-38, 141, 145-46, 149-50, the alleged conduct described therein is largely attributed to Defendants other than Dr. Campbell and the School District, such as the state and county agency Defendants and judges. *See id.* ¶¶ 133-36, 139-40, 142-44, 147-48.

includes the generalized allegations, "Appears Defendants' do not see anything wrong with mothers and that maternal Filicide does not exist," and that Defendants engaged in "sexual discrimination against men (dads)." *Id.* ¶¶ 78, 302. Finally, Appellants allege that Defendants discriminated against Rebekka and J.B. for "their religious beliefs." *Id.* ¶ 143.

The only allegation of discrimination with any factual support is easily disposed of as being inextricably intertwined with the state court judgments. Appellants allege that Defendants discriminated against Louis Behr "because of his age," as purportedly shown by "bringing up the age difference between Mr. Behr and Ms. Brooks on the records and documents." *Id.* ¶ 146.

Instructive for evaluating this claim is this Court's analysis in *Dale v. Moore*, 121 F.3d 624 (11th Cir. 1997), where the Court concluded that a bar applicant's disability discrimination claims were barred. The applicant in that case alleged that he had "bipolar dysfunction" disorder, and that the Bar prepared a document called "Specifications" about his medical condition. *Id.* at 625. He framed his claim as seeking relief only for "intentional discrimination in falsely portraying him as disabled, impaired, or otherwise unfit for admission to practice in the Florida Bar." *Id.* at 626. The "Specifications" report was prepared as part of Bar's inquiry into the applicant's fitness to practice in law pursuant to the rules governing the admissions process. *Id.* The Court thus found the claim to be inextricably intertwined and barred

because it "would require the federal district court to review the application of these rules to the particular factual circumstances of [the applicant's] case." *Id.* at 627.

Moreover, the applicant had a reasonable opportunity to raise his discrimination claim where he was provided with the challenged report and permitted to file an answer to it. *Id.* The Court reasoned that the applicant's answer "could have complained that the [Bar's] consideration of his alleged mental illness violated the ADA." *Id.* The applicant also could have raised his claims in a petition to the Florida Supreme Court. *Id.*

Based on *Dale*, quick work can be made of the argument that the age discrimination claim by Louis Behr is an independent claim, where the alleged discriminatory conduct was focus on the age difference between Mr. Behr and his former spouse. DE 56 ¶ 146. That claim is inextricably intertwined with the state court judgments because Appellants allege that it was a point raised during the proceedings. *See id.* (alleging the issue was brought up "on the record and documents").

As in *Dale*, then, to resolve the age-difference claim, the federal court would have to review whether it was proper for the state court to consider the age difference in its decision-making process. 121 F.3d at 627. Moreover, Appellants could have argued that the injection of the age-difference issue into the proceedings was discriminatory or otherwise inappropriate. *Id.* Put another way, the claim that

consideration of the age difference was discriminatory "was or should have been properly before the state court." *Target Media Partners*, 881 F.3d at 1286.

As discussed above, the other allegations of discrimination by Appellants are conclusory, so it is not clear what the factual basis for those allegations is. Appellants attempt to rely on case law from other circuits[13] to argue that their discrimination claims are not barred because "[i]t does not appear that the family court addressed those arguments" and the custody decisions would have been based on "different standards," such that the state court's decision would not be called into question by the federal court entertaining the discrimination claims. Init. Br. at 27-28.

The problem with Appellants' argument is that they have again failed to carry their burden "to demonstrate that the *Rooker–Feldman* doctrine does not apply to [their] claims arising out of the family court proceedings." *Khalil*, 594 F. App'x at 90. For instance, Appellants have not shown that the other alleged discrimination was not injected into the state court proceedings, as Mr. Behr alleges occurred with respect to the age difference between his former spouse and him. It cannot be said based on the Second Amended Complaint that the federal court is not ultimately being asked to conclude that the state court "wrongly decided the issues," *Target Media Partners*, 881 F.3d at 1286, because it improperly considered the age, sex,

---

[13] *Phifer v. City of New York*, 289 F.3d 49 (2d Cir. 2002); *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486 (3d Cir. 1997).

religion, or disabilities of any of the Appellants.[14] Appellants therefore show no error in the District Court's dismissal of these discrimination claims under *Rooker-Feldman*.

In short, the age-difference allegation was barred because Appellants alleged that it was made an issue during the proceedings. The remaining allegations of discrimination were so conclusory and unsupported that Appellants failed to show they were truly independent of the state court proceedings. This Court should affirm the dismissal of Count 10 pursuant to *Rooker-Feldman*.

d.      State Law Claims

Appellants also point to several other claims as being independent, but these claims are all brought under state law. *See* Init. Br. at 24-25, 28 (arguing District Court should have exercised supplemental jurisdiction over claims for negligence, public records, medical malpractice, defamation, and legal malpractice). Because the District Court lacked jurisdiction over the Appellants' federal claims for the reasons discussed above, however, the state law claims were all properly dismissed for lack

---

[14] Similarly distinguishable is *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618 (11th Cir. 2015) (unpublished). The plaintiff's principal claim of discrimination in that case focused on a loan modification process that did not begin until two years after the defendants had obtained a foreclosure judgment against her in state court. *Id.* at 622. The discrimination claim was not barred because it "was not addressed by the foreclosure judgment, nor could it have been since the alleged discrimination occurred after the state foreclosure judgment had been rendered." *Id.* Here, on the other hand, there is no clear indication that Appellants challenge only conduct independent of the state court judgments in the Second Amended Complaint.

of jurisdiction. *See Alyshah v. United States*, 241 F. App'x 665, 668 (11th Cir. 2007) (unpublished) ("Having concluded that it lacked jurisdiction over the federal claims, however, the district court should have dismissed, for lack of jurisdiction, Alyshah's state-law claims, rather than reaching the merits of those claims."). To the extent that the District Court did not state that it was dismissing the state law claims because it lacked jurisdiction over the federal claims, this Court "may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court." *Bonanni Ship Supply, Inc. v. United States*, 959 F.2d 1558, 1561 (11th Cir. 1992).

## II.    Even if Any of the Federal Claims Identified by Appellants Survive, this Court Should Affirm the Dismissal of Dr. Campbell and the School District.

Dr. Campbell and the School District offer the above arguments in support of the District Court's *Rooker-Feldman* analysis in an abundance of caution, given that the allegations in Appellants' Second Amended Complaint often refer broadly to all Defendants. That said, the few federal claims in the Second Amended Complaint that Appellants argue on appeal are not barred by *Rooker-Feldman* do not contain clear, express allegations against Dr. Campbell or the School District.[15] Nor do the

---

[15] As noted above, Count 3 (unreasonable search and seizure) expressly names Defendants other than Dr. Campbell or the School District. *See* DE 56 ¶¶ 83-84. As for Counts 2 (due process) and 10 (discrimination), the only possible inclusion of Dr. Campbell and the School District therein was through improper and vague references to all Defendants. *See infra* Section III. Appellants simply did not plead

portions of those federal claims that Appellants discuss in their Brief expressly implicate Dr. Campbell or the School District. *See* Init. Br. at 20-23, 25-28. Thus, even if this Court ultimately agrees that one or more of the federal claims Appellants have identified in this appeal survives the *Rooker-Feldman* bar, Dr. Campbell and the School District respectfully request that this Court nevertheless affirm the dismissal of Dr. Campbell and the School District from this case.

The only claim that Appellants identify in their Brief that expressly involves the School District is Count 8, pertaining to access to records. Appellants suggest that the District Court should have construed this claim liberally as arising under Florida's Public Records Law and exercised supplemental jurisdiction over it. Accepting Appellants' characterization of the claim as being brought under Florida's Public Records Law for the sake of argument, it was nevertheless properly dismissed because it would have fallen outside the boundaries of proper supplemental jurisdiction.[16] *See Bonanni Ship Supply*, 959 F.2d at 1561 (this Court "may affirm

---

"enough facts to state a claim to relief that is plausible on its face" with respect to Dr. Campbell or the School District in Counts 2 and 10. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also id.* ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[16] If "[t]he issue is whether the district court had supplemental jurisdiction to begin with," then that is a question of law this Court reviews *de novo. Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 n.7 (11th Cir. 2012).

the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court.").

With respect to the School District, all Appellants allege is that the District "had a duty upon Mr. Behr's written and verbal requests to submit all documentation involving these case matters … and have refused to produce such documents requested." DE 56 ¶ 121. Appellants do not provide any more detail about what records they requested from the School District, when they made the requests, or any other facts about the requests.

28 U.S.C. § 1367 provides, in pertinent part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Section 1367(a) "defines the permissible boundaries for the exercise of supplemental jurisdiction; that is, it delineates the *power* of the federal courts to hear supplemental claims and claims against supplemental parties." *Estate of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1366 (11th Cir. 2010) (quotation marks omitted).

The statute "authorizes a court to hear supplemental claims to the full extent allowed by the 'case or controversy' standard of Article III of the Constitution." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742–43 (11th Cir. 2006). "The

constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim." *Id.* at 743. "We take the nucleus of facts on which the federal question claims are based and compare it to the nucleus of facts on which the state law claims are based." *Upper Chattahoochee Riverkeeper Fund*, 701 F.3d at 679.

Here, there is nothing to suggest that Appellants' claim about Mr. Behr's request for records arises out of a common nucleus of operative fact with Appellants' potentially surviving federal claims. Those federal claims involve the use of falsified and/or coerced information in the state court proceedings, the adequacy of counsel or ability of Appellants to participate in state court proceedings, an unreasonable search and seizure, and discrimination against Appellants on the basis of age, sex, religion, and/or disability. Mr. Behr's request for records, on the other hand, apparently sought documents *about* these cases from the School District, but there are no facts connecting whatever requests he made to the other allegations in the Second Amended Complaint. Indeed, Appellants contend that the public-records claim should not have been dismissed *because* it was independent of the state court proceedings. Init. Br. at 24-25.

Moreover, the public-records claim will involve different facts, occurrences, witnesses, and evidence from the Appellants' federal claims. *Cf. World Holdings,*

*LLC v. Fed. Republic of Germany*, 701 F.3d 641, 651 (11th Cir. 2012) ("Where …

each claim involves the same facts, occurrences, witnesses, and evidence, the case

or controversy requirement of section 1367 is satisfied.") (quotation marks omitted).

The questions relating to the public-records claim will be whether the Mr. Behr can

state a prima facie claim for access under section 119.07(1)(a), Florida Statutes,[17] as

well as whether any statutory exemptions apply and whether the School District even

had the requested records.[18] *See Staton v. McMillan*, 597 So. 2d 940, 941–42 (Fla.

1st DCA 1992).

Because the public-records claim in Count 8 was not part of the same case or

controversy as Appellants' federal claims relating to due process, unreasonable

search and seizure, or discrimination, it was beyond the District Court's power to

exercise supplemental jurisdiction over it. It was therefore properly dismissed on

that basis.

---

[17] "Every person who has custody of a public record shall permit the record to be
inspected and copied by any person desiring to do so, at any reasonable time, under
reasonable conditions, and under supervision by the custodian of the public records."
[18] For instance, Appellants allege that an interview with Rebekka occurred at
Seminole Ridge High School, presumably as part of an investigation into allegations
of child abuse. *See* DE 56 ¶ 157. By statute, "[i]nformation received during the
interview" conducted at school during a child protective investigation "or from any
other source regarding the alleged abuse or neglect of the child is confidential and
exempt from s. 119.07(1), except as otherwise provided by court order."
§ 39.301(18), Fla. Stat. (2019). And "[a] separate record of the investigation of the
abuse, abandonment, or neglect may not be maintained by the school or school staff
member." *Id.*

There being no claims properly before the District Court implicating Dr. Campbell or the School District, they respectfully request that this Court, if it does not affirm the District Court's dismissal in its entirety, nevertheless affirm the dismissal of Dr. Campbell and the School District from this action.

### III. The Second Amended Complaint Was Subject to Dismissal as a Shotgun Complaint and Under Federal Rule of Civil Procedure 41(b).

Alternatively, this Court should affirm the dismissal of the Second Amended Complaint because it was an impermissible shotgun pleading filed in willful disregard of the District Court's order providing leave to file a Second Amended Complaint. *See* DE 50 at 4-6.

"A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quotation marks omitted). When a district court dismisses a complaint on shotgun pleading grounds, this Court "require[s] district courts to sua sponte allow a litigant one chance to remedy such deficiencies." *Id.* The District Court here did that. *See* DE 50 at 4-6.

In its order striking the Amended Complaint, the District Court also gave Appellants a clear indication of what an impermissible shotgun complaint consists of, along with detailed instructions about how to plead in compliance with Federal Rule of Civil Procedure 8. *Id.* at 5-6. The District Court expressly warned Appellants

that shotgun complaints do not comply with Federal Rule of Civil Procedure 8. *Id.* at 5. The District Court informed Appellants that shotgun complaints include those "in which the general factual allegations in the Complaint are realleged and incorporated by reference into each claim for relief, making it impossible to know which factual allegations correspond to which claims for relief against which defendants." *Id.*; *see Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (identifying one category of shotgun complaints as those "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.").

The District Court also informed Appellants that "in a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient to permit the defendants, or the Court, to ascertain exactly what a plaintiff is claiming." DE 50 at 5; *see Weiland*, 792 F.3d at 1323 ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). Appellants were directed to file a Second Amended Complaint "that complies with the Federal Rules and the Court's Order at docket entry 34[.]" DE 50 at 6.

Where a plaintiff thereafter "fails to make meaningful modifications to her complaint, a district court may dismiss the case under the authority of either Rule 41(b) or the court's inherent power to manage its docket." *Weiland*, 792 F.3d at 1321 n.10. Here, Appellants failed to make meaningful modifications to their complaint, as the Second Amended Complaint contains the same deficiencies that the District Court had expressly identified.

Because the Second Amended Complaint is another shotgun pleading and because Appellants willfully disregarded the District Court's order striking their Amended Complaint, the District Court would have been justified in dismissing the Second Amended Complaint with prejudice. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1359 & n.13 (11th Cir. 2018); *see also Arrington v. Green*, 757 F. App'x 796, 798 (11th Cir. 2018) (unpublished) (affirming dismissal with prejudice where district court informed *pro se* plaintiff of shotgun nature of his original pleading and plaintiff failed to correct deficiencies identified by district court in amended complaint).

In *Jackson*, this Court affirmed the dismissal of an amended complaint with prejudice on the alternative grounds that it was an incomprehensible shotgun pleading and under Rule 41(b), where the district court had dismissed the amended complaint for failure to state a claim. 898 F.3d at 1359 & n.13. The plaintiffs in *Jackson*, after being put on notice about the defects in their complaint, "filed an

amended complaint afflicted with the same defects" and "attempt[ed] halfheartedly to cure only one of the pleading's many ailments." *Id.* at 1358-59.

Here, the Second Amended Complaint appears at first blush to be an improvement upon the Amended Complaint, at least with regard to its length. Nevertheless, the Second Amended Complaint still "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."[19] *Weiland*, 792 F.3d at 1321. And it still contains "generalized allegations 'lumping' multiple defendants together" that make it impossible to ascertain exactly what Appellants are alleging against each Defendant.[20] DE 50 at 5; *Weiland*, 792 F.3d at 1323. Thus, the Second Amended Complaint is another shotgun pleading and, with Appellants having received notice of the defects in the Amended Complaint and a chance to replead, dismissal with prejudice is now appropriate. *See Jackson*, 898 F.3d at 1359; *Arrington*, 757 F. App'x at 798.

---

[19] *See* DE 56 ¶¶ 72, 79, 82, 85, 98, 104, 109, 120, 125, 130, 152, 160, 164, 168, 175, 183, 187, 195, 204, 209, 220, 227, 234, 243, 247, 251, 262, 271, 280, 286, 295.

[20] *See* DE 56 ¶¶ 53 (page 17), 56, 71; 73, 78, 80, 82 (pages 24 through 25); 75-78 (on pages 25 through 26); 86-93, 96-97, 99, 101-03, 105, 107-08, 112, 116-19, 126, 131-32, 134, 136-38, 145-46, 149-50, 153-55, 161-63, 165, 169-73, 176, 181, 185, 188-89, 191-93, 196, 198-202, 205-07, 210; 214-18 (on page 52); 221, 223-25, 228, 232, 235, 237-41, 248-49, 252, 254, 259-60, 266, 269, 272-78, 281, 283-84, 287, 289-93, 302.

Further, Federal Rule of Procedure 41(b) allows a court to dismiss an action for the plaintiff's failure to comply with a court order. The *Jackson* Court explained that "dismissal *with prejudice* pursuant to Rule 41(b) was appropriate" where a shotgun complaint was filed in willful disregard of the district court's order and despite "this Circuit's voluminous precedent decrying shotgun pleadings." 898 F.3d at 1359 n.13.

Though dismissal with prejudice is a "harsh sanction," it is "thought to be more appropriate in a case where a party, as distinct from counsel, is culpable." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005). Here, Appellants were proceeding without counsel and were therefore culpable.[21] It is true, of course, that *pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But liberal construction of *pro se* pleadings "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell*

---

[21] Appellants may argue that J.B. is not culpable for the disregard of the District Court's order, as his claims were brought through his father. Because a minor child cannot bring suit through a parent acting as next friend who is not represented by an attorney, however, any claims purportedly asserted by J.B. in the Second Amended Complaint were simply a nullity. *See Whitehurst v. Wal-Mart*, 306 F. App'x 446, 448–49 (11th Cir. 2008) (unpublished) (noting that "any claim asserted on the son's behalf necessarily fails" because "a non-lawyer parent has no right to represent a child in an action in the child's name.").

*v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation marks omitted).

Applying the reasoning of *Jackson* here, then, this Court should affirm the District Court's dismissal of the Second Amended Complaint with prejudice on the alternative grounds that it was a shotgun complaint and as justified under Rule 41(b).

## CONCLUSION

For the foregoing reasons, Dr. Campbell and the School District respectfully request that this Court affirm the District Court's Order Dismissing Plaintiffs' Second Amended Complaint with Prejudice (DE 57). Alternatively, Dr. Campbell and the School District respectfully request that this Court affirm the dismissal of all claims against Dr. Campbell and the School District and their dismissal from this action.

Dated: September 20, 2019

Respectfully submitted,

/s/ Sean Fahey
Sean Fahey, Esq.
Florida Bar No.:  0101083

# CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 10,777 words as determined by the Microsoft Word (2016 version) word-processing system used to prepare the Brief. This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word (2016 version) in 14-point Times New Roman font.

/s/ Sean Fahey
Sean Fahey, Esq.
Florida Bar No.: 0101083

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2019, I electronically filed this Brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system and the following were thereby served by notices generated by CM/ECF:

Brion Blackwelder, Esq.
E-mail: brionb@nova.edu
Nova Southeastern University
Shepard Broad College of Law
Children and Families Clinic
3305 College Avenue
Fort Lauderdale, Florida 33314
Tel: (954) 262-6135
Fax: (954) 262-3832
*Counsel for Appellant, J.B., a minor*

Rachel A. Oostendorp, Esq.
Email: ROostendorp@carltonfields.com
CARLTON FIELDS, P.A.
Suite 4200 Miami Tower
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 530-0050
Fax: (305) 530-0055
*Counsel for Appellants Rebekka Behr and Louis Behr*

/s/ Sean Fahey
Sean Fahey, Esq.
Florida Bar No.:  0101083